JAMES B. HAZLETON *vs.* IDA H. LEWIS.

Barnstable.    December 4, 5, 1928. — June 5, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Frauds, Statute of. Trust. Equity Jurisdiction,* Specific performance.

A woman died intestate in 1915, her estate consisting almost entirely of real estate then valued at $1,200. It was orally agreed among her children that a son should care for another son who was a helpless cripple; that the first son should have the land in return therefor and for his distributive share of the estate; and that, to facilitate the administration of the estate, the land should be conveyed to a daughter who should convey it to the first son upon his request and when it should be safe for him to take it in his own name without interference from his creditors. The first son had lived with his mother and crippled brother upon the land, and continued to do so after her death. The land was conveyed to the daughter under the agreement and the first son paid taxes, insurance premiums and interest on a mortgage placed upon the land by the daughter under the oral agreement, made and paid for some repairs, and cared for his crippled brother until the brother's death in 1925. Thereafter, at a time when it was safe for him to take

title to the land in his own name, he made demand upon his sister for a conveyance, which was refused. At that time the land was worth $15,000. A judge who heard a suit in equity by the first son seeking specific performance of his sister's agreement found that there had been part performance of the agreement by the plaintiff sufficient to prevent the operation of the statute of frauds, and there was a decree for the plaintiff. *Held*, that

    (1) There was no trust arising "by implication of law" under G. L. c. 203, § 1;

    (2) To constitute such part performance as would prevent the operation of the statute of frauds, there must have been both possession of the land by the plaintiff in reliance on the oral agreement and substantial expenditures by him in reliance thereon;

    (3) While a finding was warranted that, after the conveyance to the defendant, the plaintiff's possession was by reason of and under the oral agreement, a finding was not warranted that there had been substantial expenditures by him in reliance thereon;

    (4) The plaintiff had an adequate remedy at law;

    (5) The increase in the value of the land did not prevent the application of that statute;

    (6) The plaintiff was not entitled to specific performance; and the decree was reversed.

It *was stated* in the suit in equity above described that the defendant was not entitled to rely on an intent by the plaintiff to hinder and delay his creditors as a bar to the suit.

BILL IN EQUITY, filed in the Superior Court on March 1, 1926, and afterwards amended, seeking to have the defendant ordered to convey certain real estate to the plaintiff pursuant to the oral agreement described in the opinion. The suit was commenced by a common law writ dated February 15, 1926.

The suit was referred to a master, material facts found by whom are stated in the opinion. By order of *Cox, J.*, there were entered an interlocutory decree confirming the master's report and a final decree granting the relief sought. The defendant appealed from the final decree.

*C. C. Campbell*, for the defendant.

*C. C. Paine*, for the plaintiff.

WAIT, J. This is an appeal from a final decree ordering a conveyance of certain premises in Barnstable, formerly the property of Betsey C. Hazleton, to be made to the plaintiff by the defendant, who is his sister of the half blood. No question of the form of procedure is raised.

Betsey C. Hazleton died in 1915, leaving as heirs at law

five children of full age: Julia Ellis, whose residence was then unknown and who has since deceased; Charles H., Warren E., James B., the plaintiff, and Ida H. Lewis, the defendant. Her estate consisted of $66, personal property, and of real estate in Barnstable appraised at $1,200. These were true values in 1915. The real estate is now worth $15,000. She owed a few debts and two mortgages on the real estate. With the expense of her illness and funeral the debts of the estate were $408.48. One Bearse was appointed administrator. The son, Warren E., was a cripple unable to earn or to care for himself. James B. Hazleton before Betsey's death moved into the real estate to care for his mother and his brother Warren. It was agreed among the children, other than Julia, that petition should be made to the Probate Court for leave to the administrator to sell the real estate for $1,200 at private sale for the payment of debts and charges of administration; that from the amount received those debts and charges should be paid, and, in addition, Charles H. Hazleton should be paid his distributive share in the estate, calculated to be $152.96; that the distributive share of Julia, $152.96 should be paid to Frank P. Lewis, husband of the defendant, upon an execution to be obtained against her by him for loans due from Julia; that the plaintiff should have the real estate for his distributive share and for caring for Warren during his lifetime, but the title to the real estate should be taken in the name of the defendant who should give a note, secured by mortgage of the real estate, for the amount of money necessary to pay the debts, charges, and the shares of Charles and Julia; and who, when his financial affairs became such that it would be safe for him to take title without interference by his creditors, should on plaintiff's request make conveyance to him subject to the mortgage.

This arrangement was carried out. Leave to sell for $1,200, was granted August 8, 1916. The administrator made a deed of the real estate to Mrs. Lewis for a recited consideration of $1,200 under date of November 3, 1916. By deed of the same date, the plaintiff, and Warren E., reciting consideration of "one dollar and other good and valuable consideration" released with quitclaim covenants to

Mrs. Lewis, "each, every and all the entire right, title and interest we now have, may have had or shall ever have, whether as heirs or otherwise, in and to any and all the real and personal estate of the late Betsey C. Hazleton." On the same date, Mrs. Lewis executed a mortgage deed of the real estate to one Hamblin for $825, due in two years with interest at six per cent, payable semiannually. The administrator obtained the amount of the mortgage, and paid the debts, charges, and distributive share of Charles. He received from the court, on August 4, 1917, leave to deposit $152.96, the share of Julia, in her name in a savings bank where it was attached and eventually applied upon the contemplated execution against Julia. He filed a first and final account in January, 1919, showing receipts of $891, and expenditures of the same amount, which, after notice and hearing, was allowed by decree dated February 25, 1919. The account set out a payment of $83.91 to Mrs. Lewis, not, however, on account of her distributive share; and the administrator filed a release of all claims and demands against the estate signed and sealed by her and her husband, dated November 23, 1916.

The plaintiff lived on the real estate, paid the taxes, insurance and interest on the mortgage, made and paid for some repairs, and furnished a home and care for Warren until the latter's death in October, 1925. Contributions toward Warren's care and support were made by the town of Barnstable at $2 per week; by a fraternal order, also $2 per week; by the defendant, who sent articles of clothing and small amounts for spending money amounting in all to about $200; and by the plaintiff. The contributions of the defendant were made at Warren's request communicated to her by neighbors.

In 1919 the plaintiff visited the registry of deeds and learned that the title stood absolutely in the defendant's name. He consulted a lawyer about it, and inquired of the administrator as to his understanding of the agreement. He made written demand on the defendant, July 27, 1925, for a reconveyance to him. She refused, denying that he had any right, claiming that she bought the property in good faith,

but offering to sell him one half "very cheap." About the time of Warren's death, he again demanded a conveyance, but was again refused. This bill was filed March 1, 1926.

At the time of Betsey's death the plaintiff owed small amounts of money which he could not pay. Some of this indebtedness has been cleaned up; and at the date of the decree, while he still owed bills, the finding was justified that title now would not be taken from him by pressing creditors. The title was taken by Mrs. Lewis rather than by the plaintiff in order to avoid attachment or levies by his creditors.

The plaintiff did not pay the taxes for 1925, after the defendant's refusal to convey, and defendant paid them on demand of the collector of Barnstable. She has paid something for insurance. No payment has been made on the principal of the mortgage. She has never received any distributive share of her mother's estate.

These facts justify findings as follows: The defendant obtained conveyance of the plaintiff's distributive share in his mother's estate and his individual share in her real estate upon her agreement to give a mortgage on the real estate formerly of her mother to facilitate the administration of the mother's estate, and to convey the entire real estate to him, subject to the mortgage, when his financial condition made it safe for him to hold real estate in his own name, if he would furnish a home and support for their brother Warren during Warren's lifetime, and pay the carrying charges of the property, taxes, insurance, interest and repairs. This he has done. On the faith of that agreement Warren has conveyed his distributive share in his mother's estate and his undivided interest in her real estate to the defendant; Charles has accepted $152.96 as his distributive share and only claim against the estate; the defendant's husband has obtained $152.96 due him from Julia; the defendant, although she still remains liable upon the mortgage note for $825, has been relieved from payments of interest upon it, and has been relieved from all except her voluntary contributions to the support and care of her brother Warren; and her mother's estate has been settled in accordance with the agreement.

These findings would support the decree for conveyance

by the defendant subject to the mortgage, unless the statute of frauds set up in her answer furnishes a complete defence. That statute is binding in equity as well as at law. It lays down a rule of public policy which must be observed. G. L. c. 203, § 1, provides: "No trust concerning land, except such as may arise or result by implication of law, shall be created or declared unless by a written instrument signed by the party creating or declaring the trust or by his attorney." There is no writing creating or declaring the trust. The trusts which arise by implication of law are those which result from payment for property either in whole or in aliquot parts of the purchase money, where the title is taken in the name of some person other than the purchaser; or from fraudulent conduct of the holder of the title at the inception of the transaction. *Kemp* v. *Kemp*, 248 Mass. 354, 357, and cases cited. Neither is present here. Manifestly there is no resulting trust. *Quinn* v. *Quinn*, 260 Mass. 494. Equally clearly there was no fraud on the defendant's part in the arrangements for the settling of the estate. There is nothing to show that she led the plaintiff to rely upon her promise intending later on to refuse to perform it. The refusal to carry out an oral promise to convey land, standing by itself, is not a fraud. *Campbell* v. *Dearborn*, 109 Mass. 130, 140. *Clifford* v. *Heald*, 141 Mass. 322. *Bourke* v. *Callanan*, 160 Mass. 195. *Southwick* v. *Spevak*, 252 Mass. 354, 357. By G. L. c. 259, § 1, it is provided that no action shall be brought upon a contract for the sale of lands, tenements, or hereditaments or of any interest in or concerning them unless the contract or some memorandum of it is in writing signed by the party to be charged. There is here no such written contract or memorandum in writing.

The judge, however, held that there had been part performance sufficient to preclude the defendant from setting up the statute of frauds to prevent recovery by the plaintiff. In *Derby* v̇. *Derby*, 248 Mass. 310, 314, it is said: "It is too well settled for discussion that an oral agreement to convey land may be specifically enforced in equity, notwithstanding the statute of frauds, where the agreement has been partly performed by the party seeking to enforce it, by taking pos-

session and making improvements upon the estate . . . so that he cannot be restored to his original situation." The qualifications upon the doctrine, however, are not stated and no attempt will be made to state them fully here; but it is important to consider what possession and what improvements are required by the law and how far the requirements are met in the case before us.

It is usually stated that the possession must be taken under the alleged agreement. *Glass* v. *Hulbert*, 102 Mass. 24, 28. *Taber* v. *Shields*, 258 Mass. 511. In *Morse* v. *Winslow*, 254 Mass. 407, where a daughter who had been promised orally by her father that he would convey to her the house where they lived if she would stay at home and take care of her mother and him, stayed, and for ten years rendered the service, it was held that, though in the house, she had no possession which would support part performance. In the present case the original possession by the plaintiff was in the mother's lifetime, and wholly apart from the agreement with the sister here relied on. After the mother's death he continued in possession with Warren up to the time of the agreement apparently as owner of an undivided fifth. So far it is comparable to the daughter's situation in *Morse* v. *Winslow*. Thereafter, however, he and Warren conveyed their rights to the defendant for the purposes of the agreement. A new possession began, assented to by the owner of the legal title, which was not as tenant in common but as holder in equity of the entire fee. *Morse* v. *Winslow* becomes no longer directly in point on possession. We think his possession can properly be held to be under the alleged contract, although the question is close.

In addition to possession, there must be also, to use the words of *Glass* v. *Hulbert, supra,* at page 31, "some change in the condition or position of the party seeking relief, by reason of being induced to enter upon the execution of the agreement, or to do acts upon the faith of it as if it were executed, with the knowledge and acquiescence of the other party, either express or implied, for which he would be left without redress if the agreement were to be defeated." Or as stated in *Burns* v. *Daggett*, 141 Mass. 368, 373, "The occupation of the

premises and the making of repairs and improvements upon them . . . do not of themselves constitute such part performance as to do away with the statute. To have that effect, the occupation of the premises and the expenditures upon them must have been induced by the contract, and in reliance upon its performance, and such that adequate compensation could not be made for them by the defendant except by the conveyance of the premises, so that it would be fraudulent in him to withhold a conveyance, and he would be estopped from setting up the statute of frauds, against the plaintiff's demand for a deed." The improvements made must be substantial. In *Potter* v. *Jacobs,* 111 Mass. 32, where the same judges that decided *Glass* v. *Hulbert, supra,* held that sufficient had been shown to establish a part performance estopping the defendant from the benefit of the statute of frauds, there were expenditures of $1,700 in building upon the land. In *Williams* v. *Carty,* 205 Mass. 396, there were expenditures for ditching, a change of dwelling at considerable expense, and other dealings which were thought sufficient. In *Mason* v. *Albert,* 243 Mass. 433, there were in addition to expenditures special circumstances such that the purchaser could not be made whole and restored to his rights. The plaintiff relies upon these cases, and not without reason; but we think all contain elements which are not here present. He has done little upon the premises which involves serious expense. The payments of interest and taxes he would have had to make without regard to the nature of his possession. They do not make out a part performance. In our opinion the plaintiff may be amply remedied in damages.

The defendant cannot set up the intent to hinder and delay creditors of the plaintiff, in which she participated, to prevent recovery. The conveyance from the administrator to her was valid. The plaintiff could make out a case without reference to this element in the facts. *Harvey* v. *Varney,* 98 Mass. 118, *Schmidt* v. *Schmidt,* 216 Mass. 572. See also, *Lufkin* v. *Jakeman,* 188 Mass. 528, 532.

The great increase in the value of the real estate is not due to any labor or expense put upon it by the plaintiff or by the

defendant. That she and not he may profit by it is owing to his disregard of widely known requirements of the statutes of Massachusetts. We cannot allow our feeling that he is dealt with harshly to blind us to his failure to observe the statutes of frauds. *Quinn* v. *Quinn, supra,* page 504.

The case is governed by the principles illustrated in *Glass* v. *Hulbert, supra,* and the cases which have followed it, especially in *Morse* v. *Winslow, supra; Taber* v. *Shields,* 258 Mass. 511; *Des Brisay* v. *Foss,* 264 Mass. 102, 112; *Palumbo* v. *James,* 266 Mass. 1.

It follows that the order must be

*Decree reversed.*