GERALD W. BRADFORD vs. SAMUEL A. RICHARDS, JR.,
administrator, & others.[1]

Middlesex.    December 12, 1980. — March 25, 1981.

Present: GREANEY, ROSE, & KASS, JJ.

*Res Judicata. Probate Court*, Jurisdiction.

An action to recover for the fair value of services rendered by the plaintiff
to his landlady prior to her death was not precluded by a prior judg-
ment in the Probate Court which disallowed as the deceased's will a
document proffered by the plaintiff by which the deceased purported-
ly devised her house to the plaintiff because of his services to her
where, although the quantum meruit claim could have been raised
together with the plaintiff's claim to title based on the purported will,
the fundamental facts to be established in connection with each claim
were substantially dissimilar. [597-601]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 2, 1979.

The case was heard by *Hallisey*, J., on a motion for sum-
mary judgment.

*Michael S. Kinson* for the plaintiff.

*Kenneth P. Brophy (John K. Leslie* with him) for the de-
fendants.

KASS, J.    Upon a motion for summary judgment,
Mass.R.Civ.P. 56, 365 Mass. 824 (1974), a judge of the
Superior Court decided that the plaintiff Bradford's quan-
tum meruit claim was precluded by a prior judgment in a
Probate Court.  Despite some common factual background,
we do not think that Bradford has improperly split his
claims, and we reverse the judgment below.

---

[1] Hazel R. Coughlin, Lavania M. Lambert, and Albert R. Simpson,
heirs of Christina N. Park.  Samuel A. Richards, Jr., is the administrator
of Christina N. Park's estate.

For purposes of deciding the res judicata issue, the material facts are as follows: Bradford took up tenancy in August, 1976, in an upstairs apartment of the home of the decedent, Christina N. Park. His monthly rent was $200, which he paid until Park died April 30, 1978. During this period Bradford claims to have supplied labor and materials for repairs and renovations to Park's house. He also alleges in the complaint in the instant case that he gave Park general care, furnished physical aid, ran errands, and did housekeeping.

After Park died, Bradford continued to live in Park's house. On October 6, 1978, the administrator of Park's estate, who is one of the defendants in this case, initiated summary process against Bradford and his wife, who by then was living in Park's house with Bradford. Judgment for possession was entered in a District Court on October 23, 1978.

This turn of events Bradford resisted by claiming Park had left the house to him. In support of his contention, Bradford produced a holographic will, exhumed by Mrs. Bradford from his coat,[2] and initiated proceedings in the Probate Court to have the document allowed as Park's will. Bradford also brought a complaint[3] in the Probate Court asking that his eviction from the Park house be enjoined because the house, under the will he had found, would be his. That complaint further alleges the services performed

[2] In its entirety, the purported will read as follows: "I, Christina S. Park being of sound mind do will and bequeath my home and my land located at 119 Acton Road, Chelmsford Mass. to the only one who has helped to care for me in my physical pain and also fixed the premises so that they would be liv[e]able to my benefactor and companion Gerald W. Bradford all my wordly goods and home free of all incumbrances which should be paid by my next of kin who would never help me in my time of need. Christina S. Park (witnesses I don't need)."

[3] Bradford's Probate Court actions were begun fifteen days apart: the complaint for injunctive relief on November 22, 1978, and the petition for allowance of the will on December 7, 1978. The complaint refers to the will which Bradford had uncovered as having been filed with the Probate Court.

by Bradford for Park which are the basis for the complaint in the Superior Court which launched the present case. A master found that the Park will was not genuine[4] and a Probate Court judge (on June 25, 1979, but as of May 14, 1979) "disapproved and disallowed" the instrument as Park's will "for the lack of due execution of the same." The judge later dismissed (as of June 25, 1979) the accompanying action for injunctive relief. Prior to the resolution of the Probate Court proceedings, Bradford filed the action for the fair value of his services which is the subject of this appeal.

Judgment in a prior action precludes subsequent litigation when the two cases involve the same parties, final judgment on the merits by a court of competent jurisdiction, and the same cause of action. *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 280 (1933). *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 688 (1974). There is no controversy about the identity of the parties. Compare *Morganelli* v. *Building Inspector of Canton*, 7 Mass. App. Ct. 475, 481-487 (1979).

(a) *Judgment on the merits by a court of competent jurisdiction.* Res judicata (the Restatement of Judgments prefers the phrase "former adjudication"[5]) does not apply when the court which heard the first action did not have subject matter jurisdiction (or was limited by some other formal barrier) over the subject in the second action. Restatement (Second) of Judgments § 61.2(1)(c) & Comment c (Tent. Draft No. 5, 1978). Here, the plaintiff could not have raised his various claims under the umbrella of the summary process proceeding in the District Court since that forum had no jurisdiction over the settlement of estates. See

---

[4] The master remarked particularly on the use in the purported will of a middle initial different from the middle initial by which Park was called and was known, and that none of the witnesses whose names appeared on a separate paper had either been requested by Park to witness the will or had signed it in her presence.

[5] Restatement of Judgments, c. 3 (1942). The terminology is retained by the Restatement (Second) of Judgments, c. 3 (Tent. Draft No. 5, 1978).

*Sheehan Constr. Co.* v. *Dudley*, 299 Mass. 51, 53 (1937). It was possible, however, to raise the quantum meruit claim in the Probate Court, where two related actions had lodged. One of those, it will be recalled, asked that the administrator be enjoined from evicting the plaintiff, pending the will proceeding, thus invoking the equity jurisdiction of the Probate Court under G. L. c. 215, § 6, second par. (i). Once equity jurisdiction properly attaches, the Probate Court has the power to afford the parties complete relief by settling all the controversies presented. *Cochrane* v. *Janigan*, 344 Mass. 296, 302 (1962). *A. J. Wolfe Co.* v. *Baltimore Contractors, Inc.*, 355 Mass. 361, 370-371 (1969). *Corkery* v. *Philbrook*, 6 Mass. App. Ct. 861 (1978), upon which the plaintiff relies, does not hold the contrary. It says merely that an action arising out of a contract may not by itself lodge in a Probate Court.[6] In the instant case the complaint in the Probate Court asked injunctive relief.

(b) *Same cause of action.* This brings us to the more subtle question whether the claim for the fair value of Bradford's services is a variant of the same claim[7] which lay beneath the claim of title to Park's real estate.

Even before liberal rules of joinder of claims (see Mass.R.Civ.P. 18, 365 Mass. 764 [1974]), it was not possible to bring successive suits by circumscribing theories of recovery in the first suit. *Mackintosh* v. *Chambers*, 285 Mass. 594, 596 (1934). *Sandler* v. *Silk*, 292 Mass. 493, 498-499 (1935). "The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong." *Mackintosh* v. *Chambers*,

---

[6] In any event, an action for quantum meruit is not a contract action as such, but is in the nature of restitution. Dobbs, Remedies § 4.2, at 237 (1973).

[7] Much of the decisional law about prior adjudication developed before the adoption in 1974 of the Massachusetts Rules of Civil Procedure, 365 Mass. 730 (1974). The pre-1974 cases use instead of "claim" the cognate term "cause of action." The terms are used interchangeably in this opinion.

*supra.* Relying on that principle, the defendants point to the allegations by Bradford of his help to Park, which appear in the Probate Court complaint asking injunctive relief. But res judicata depends not on the form of the pleadings, "but upon the essence of the violation of legal right on which pleadings are founded." *Id.* at 597. *Ratner* v. *Rockwood Sprinkler Co.*, 340 Mass. 773, 776 (1960). Pleadings are an indication of the prior effect of a former judgment, but they are not conclusive. *Fassas* v. *First Bank & Trust Co.*, 353 Mass. 628, 629-630 (1968). Compare *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. at 279-280.

It is necessary to inquire into the commonness of the facts upon which the successive actions rest and whether the evidence required to establish a claim or defense in the second action was required to establish a claim or defense in the first one. Restatement (Second) of Judgments § 61(2) and Comment a (Tent. Draft. No. 5, 1978). Commentators have categorized two approaches: a "pragmatic concept" which focuses on operative facts and an "individualized concept" which focuses on the sameness of the evidence. See Schopflocher, What Is A Single Cause of Action for the Purpose of the Doctrine of Res Judicata? 21 Or. L. Rev. 319, 324 (1942); Steakley & Howell, Ruminations on Res Judicata, 28 Sw. L. J. 355, 361-363 (1974); Note, Res Judicata and the Scope of a Cause of Action in Massachusetts, 34 B.U. L. Rev. 64, 65-66 (1954). Decisions in our courts do not fall into either category, but look to both criteria. The following cases have taken into consideration whether the same facts will support both claims: *Mackintosh* v. *Chambers*, 285 Mass. at 597 (earlier action on note barred second action for money lent); *Ratner* v. *Rockwood Sprinkler Co.*, 340 Mass. at 776 (tort action arising out of malfunction of sprinkler system barred contract action based on same failure of sprinkler system); *Fassas* v. *First Bank & Trust Co.*, 353 Mass. at 629-630 (previous action to enjoin foreclosure of mortgages and declare mortgages void barred second action alleging lack of validity of the same

mortgages because of the mortgagee's failure to comply with statutes regulating interest rates); *Dwight* v. *Dwight,* 371 Mass. 424, 428-429 (1976) (successive claims based on failure to disclose facts bearing on value of shares of stock in a newspaper); *Saraceno* v. *Peabody,* 1 Mass. App. Ct. 834, 834-835 (1973) (multiple attacks on implementation of an urban renewal project); *Boyd* v. *Jamaica Plain Co-op. Bank,* 7 Mass. App. Ct. 153, 165 (1979) (class action on theories of escrow and fiduciary relationship to recover interest on tax escrow deposits with banks bars subsequent suit to achieve same result based on theory of unjust enrichment); *Morganelli* v. *Building Inspector of Canton,* 7 Mass. App. Ct. at 479, 480 (same violation of zoning law). The liberal joinder of rules of modern pleading to which we have referred has expanded the scope of what a litigation may preclude. "The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Restatement (Second) of Judgments § 61, Comment a, at 142 (Tent. Draft No. 5, 1978). See Vestal, Res Judicata/Preclusion: Expansion, 47 S. Cal. L. Rev. 357, 357 (1974).

We now return to the facts to decide whether the second claim is an impermissible variation on the theme of the first. Both claims arise out of the same life situation insofar as they have to do with Bradford's moving into the Park residence and being helpful to Park. But there the common ground ends. The actions in the Probate Court had to do with the allowance as Park's will of a document purporting to be such. That proceeding involved issues of genuineness of signature and proper attestation. The petition for allowance of the coat pocket paper was not based on allegations that Park had an obligation to devise her home to Bradford; rather it was a proffer of the document as the genuine article. Perhaps the facts alleged as to Bradford's services and Park's saying that Bradford could have the house if he would continue to take care of her might have served to explain why Park left her estate to a person other

than relatives, but those facts were tangential to the questions of the genuineness and legal sufficiency of the document. The only pleading in the Probate Court in which the services and promise are mentioned is the complaint, which asked injunctive relief against eviction of the Bradfords from Park's house pending determination of the rights to Park's property in the proceedings on the "will." Those allegations were nonessential, indeed, irrelevant, to the limited purpose of the complaint, which does not ask for a determination of property rights.

Least related to the Probate Court proceedings are questions of the fair value of improvements Bradford made to Park's property and services he rendered to her. Bradford was not looking for restitution in the Probate Court, or any variant of it; he was looking for ownership and possession. The nature of the evidence which establishes one claim as compared to the other overlaps very little. Certainly, the value of Bradford's services would not have been admissible in the Probate Court proceedings at all; the receipt of evidence as to the existence of the services would have been discretionary. Although, as we have observed in part (a) of this opinion, Bradford could have elected to try the quantum meruit claim together with the claim based on the purported will, we do not think that a person can be charged with claim splitting where the fundamental facts to be established in connection with the first claim are substantially dissimilar from the facts to be established in the second. See Restatement (Second) of Judgments § 61, Comment h (Tent. Draft No. 5, 1978), which says, "Joinder of multiple claims is permissive, not compulsory."

The order allowing the motion for summary judgment and the judgment are reversed.

*So ordered.*