KATHLEEN M. ROCHE vs. JOHN J. ROCHE & another[1]
(and a companion case[2]).

Berkshire. March 7, 1986. — June 4, 1986.

Present: GRANT, BROWN, & KASS, JJ.

*Collateral Estoppel. Res Judicata. Practice, Civil*, Parties.

An unsuccessful action brought by a wife in the Superior Court to set aside
a conveyance of the marital home by the mortgagee of the property to
the husband's friend, who had bought it at a public foreclosure auction
during the pendency of divorce proceedings between the husband and
wife, did not bar a subsequent action in Probate Court against the husband
and his friend, brought by the wife seeking to have the house placed at
her disposal in accordance with the terms of the divorce judgment.
[309-311] BROWN, J. concurring.
An unsuccessful action brought by a wife in the Superior Court to set aside a
conveyance of the marital home by the mortgagee of the property to the
husband's friend, who had bought it at a public foreclosure auction
during the pendency of divorce proceedings between the husband and
wife, barred the wife from relitigating the friend's title to the property
in a subsequent summary process action by the friend against the wife,
and, on this ground, judgment for the friend for possession was properly
entered. [311-312]
Where during the pendency of divorce proceedings a friend of the husband
had bought the marital home from the mortgagee of the property at a
public foreclosure auction, where an action in a Probate Court against
the husband and his friend, brought by the wife seeking to have the
house placed at her disposal in accordance with the terms of the divorce
judgment, was improperly dismissed on the ground that the wife's claim
was barred by a prior action in the Superior Court, and where it appeared
that in a summary process action, by the friend against the wife, judgment
for possession in favor of the friend would not have been entered if the
wife had prevailed in the Probate Court case, it was held on appeal that
execution of the summary process judgment should be stayed pending
disposition of the Probate Court case on remand. [312] BROWN, J.,
concurring.

[1]James P. McCauley, III.
[2]James P. McCauley, III vs. Kathleen M. Roche.

SUMMARY PROCESS action commenced in the Pittsfield Division of the District Court Department on June 10, 1983.

On appeal to the Superior Court, the case was tried before *William W. Simons, J.*

CIVIL ACTION commenced in the Berkshire Division of the Probate and Family Court Department on May 4, 1984.

Motions to dismiss were heard by *Andrea F. Nuciforo, J.*

*Jack E. Houghton, Jr.,* for Kathleen M. Roche.

*Vincent A. Bongiorni* for John J. Roche.

*Robert M. Rosen* for James P. McCauley, III.

KASS, J. Although they have made their way through different courts, both appeals arise out of a common set of facts. The appeals may be considered together. In each case, claim preclusion was the basis for a disposition adverse to Kathleen M. Roche.

Here, in outline, are the facts:

During the pendency of divorce proceedings between them, Kathleen and John J. Roche permitted second mortgage payments on the marital home to slip in arrears. The mortgagee, Household Finance Corporation (HFC), took steps to foreclose and, at a public auction held March 25, 1983, sold the Roche house to McCauley, a close friend of John's. Three weeks later, on April 15, 1983, too late to be of much use to Kathleen, judgment entered in a Probate Court in the Roche divorce case requiring John, among other things, to maintain payments on the second mortgage note and allowing Kathleen to occupy the house.[3]

In the interval, Kathleen had launched an action on April 6, 1983, in the Superior Court to set aside the conveyance from HFC to McCauley. The grounds asserted in the complaint for so doing were that HFC had waived the Roches' default by accepting makeup payments on two occasions, and that HFC had failed to inform — indeed, had misled — Kathleen about the date to which a previously scheduled public foreclosure sale had been adjourned. During depositions of John and

---

[3] The record affords no hint whether Kathleen made an effort in the divorce case to obtain a temporary order requiring John to bring the second mortgage note current. See G.L. c. 208, §§ 17, 20.

McCauley and during a jury-waived trial, counsel for Kathleen probed the relationship between John and McCauley and whether McCauley had played the role of stalking horse for John. Kathleen did not, however, move to amend her complaint to add John as a party or to include allegations that McCauley had been other than a bona fide purchaser.

During a recess of the trial, Kathleen's counsel learned from a witness for HFC that John had supplied the deposit for McCauley's purchase. Again, there was no effort to amend Kathleen's pleadings or to open up the case through a motion for postjudgment relief. Final judgments were entered for HFC and McCauley.

1. *The Probate Court case.* On May 4, 1984, seventeen days after entry of judgment in the Superior Court case, Kathleen filed a complaint in the Probate Court. That complaint — charitably read — alleged collusive action by John and McCauley to frustrate any order that the Probate Court might make in Kathleen's favor concerning the house. None of the relief demanded is apt, but the reader of the complaint discerns the general idea that what Kathleen wants is to have the house placed at her disposal conformably with the divorce judgment. A Probate Court judge allowed motions to dismiss. A notation by the Probate Court judge indicates that the ground for dismissal was that the Superior Court judgment precluded litigation of the issues which Kathleen sought to raise in the Probate Court; i.e., those matters were barred by the prior adjudication.

John was not a party in the Superior Court proceeding and the core issues raised by the Probate Court complaint were never raised in the Superior Court. The proceedings below do not, therefore, present the prototypical res judicata case; i.e., one in which there has been a final judgment (Restatement [Second] of Judgments § 13 [1982]), concerning parties to the prior action (Restatement [Second] of Judgments § 34), of an issue actually litigated and essential to the judgment (Restatement [Second] of Judgments § 27 [1982]) and over which the court had jurisdiction (Restatement [Second] of Judgments § 20). See *Almeida* v. *Travelers Ins. Co.,* 383 Mass. 226, 229-230 (1981); *Dowd* v. *Morin,* 18 Mass. App. Ct. 786, 793-794 (1984).

What the proceedings below present is a question of claim splitting resulting in claim preclusion, i.e., a bar against the plaintiff's pursuing rights and remedies arising from the same transaction which could have been raised in the case which went to judgment. *Mackintosh* v. *Chambers,* 285 Mass. 594, 596 (1934). *Boyd* v. *Jamaica Plain Co-op. Bank,* 7 Mass. App. Ct. 153, 160 (1979). *Mongeau* v. *Boutelle,* 10 Mass. App. Ct. 246, 251-252 (1980). *McSorley* v. *Hancock,* 11 Mass. App. Ct. 563 (1981). *Bradford* v. *Richards,* 11 Mass. App. Ct. 595, 598-601 (1981). *Fluhr* v. *Allstate Ins. Co.,* 15 Mass. App. Ct. 983, 984-985 (1983). *Isaac* v. *Schwartz,* 706 F.2d 15, 17 (1st Cir. 1983). Restatement (Second) of Judgments § 24 (1982).

That John was not a party to the Superior Court trial does not eliminate claim splitting from consideration. A person who is not a party to the prior action but whose interest is represented by a party may have the benefit of the judgment in the prior case. See *Morganelli* v. *Building Inspector of Canton,* 7 Mass. App. Ct. 475, 481 (1979); *Southwest Airlines Co.* v. *Texas Internatl. Airlines,* 546 F.2d 84, 95 (5th Cir. 1977), and cases cited; Restatement (Second) of Judgments § 41 (1982). The factual premise on which Kathleen pitches her latter action (the one in the Probate Court) is that John provided all the money with which McCauley bought the Roche house at the foreclosure sale. This suggests a resulting trust, a trust which may arise when one person supplies money to acquire property and title is taken in the name of another.[4] *Hazelton* v. *Lewis,* 267 Mass. 533, 538 (1929). *Saulnier* v. *Saulnier,* 328 Mass. 238, 240 (1952). *Meskell* v. *Meskell,* 355 Mass. 148, 150 (1969). See *Bartula* v. *Bartula,* 6 Mass. App. Ct. 907, 908 (1978). McCauley, on the facts alleged, stood as trustee for John. In that status McCauley might be said to have represented John's beneficial interest in the house. A trustee may represent interests of beneficiaries for judgment preclusion purposes.

---

[4] Curiously, Kathleen's Probate Court complaint, in its prayers, does not ask imposition of a resulting trust on the property to which McCauley holds title in favor of John. Rather, it asks for imposition of a resulting trust or constructive trust in *her* favor, a result which the facts pleaded do not support.

*Southwest Airlines Co.* v. *Texas Internatl. Airlines,* 546 F.2d at 95. Implied trustees, however, do not fit plausibly in a representative capacity. Theirs is not a position of fiduciary responsibility. The customarily applicable word of "imposing" a constructive trust or resulting trust signals the remedial nature of the concepts. See Restatement (Second) of Judgments § 41 comment c (1982). There is no suggestion that John controlled the defense in the Superior Court litigation. See *Southwest Airlines Co.* v. *Texas Internatl. Airlines,* 546 F.2d at 95. Since John played no role directly or vicariously in the Superior Court proceeding, we are of opinion that he is not entitled to claim a benefit from the judgment in that case.

There is an additional reason why we think the judgment in the first case did not preclude a trial of the second action. To be sure, both cases stem from the same transaction, i.e., connected acts forming a single life-situation. See Restatement (Second) of Judgments § 24 comment a (1982). The facts common to both cases are: John failed to make the second mortgage payments; the second mortgagee exercised its rights to accelerate the second mortgage note; the second mortgagee foreclosed its mortgage; McCauley made the successful bid (it was in excess of the second mortgage) at the foreclosure sale; and McCauley was a close friend of John's.

In the Superior Court case the primary defendant was HFC and McCauley was joined because he held the title. Should the action to upset the foreclosure sale succeed, it would be necessary to undo the conveyance which followed from it. It is apparent from the record in the Superior Court case that Kathleen's counsel began to sniff the possibility that John and McCauley had conspired to have McCauley bid and buy in John's behalf with the object of thwarting a Probate Court judgment adverse to John. In a deposition of McCauley, Kathleen's counsel, as we have previously noted, put questions which probed for evidence tending to prove that McCauley acted as straw for John. Those inquiries were not successful. A better lead developed when an HFC employee, during a recess, let it fall that the deposit check furnished by McCauley had been John's. At that juncture it was possible for Kathleen

to move to amend her complaint to add John as a party defendant and to add allegations that John was the true buyer at the foreclosure sale. The jurisdiction of the Superior Court is sufficiently commodious and the rules of procedure are sufficiently flexible to accommodate such steps. Jurisdiction and procedural rules are among the factors to consider in weighing whether claims have been permissibly or improperly split. See Restatement (Second) of Judgments § 24 comment a (1982). Realistically appraised, however, the prospects for success in altering the scope and nature of the action so late in the day would be daunting.

In striking the delicate balance between bringing litigation to a close and vindication of a just claim, see Restatement (Second) of Judgments § 24 comment b (1982), we weigh the acts of concealment by John and McCauley which, if proved, contributed to restricting the scope of the initial action. There would be something anomalous about giving a defendant the benefit of claim preclusion when that defendant took steps calculated to assure the exclusion of the claim from the prior litigation. See *Dwight* v. *Dwight,* 371 Mass. 424, 430 (1976); Restatement (Second) of Judgments § 26 comment j (1982).

To these considerations we add the observation that the targets of the first and second actions are distinct and do not present variations on the same theme. See *Bradford* v. *Richards,* 11 Mass. App. Ct. at 600. The action in the Superior Court aimed at the foreclosure and was directed at HFC. The action in the Probate Court accepted the fact of the foreclosure, did not involve HFC, but called in question whether McCauley's acquisition of title was for his own account or for John's.

2. *The summary process case.* On June 10, 1983, McCauley brought a summary process action (G. L. c. 239) in a District Court to evict Kathleen from the Roche house. In her answer, Kathleen claimed to be the lawful owner of the property and challenged McCauley's title. Judgment for possession in McCauley's favor entered in the District Court on July 21, 1983. Kathleen took an appeal to the Superior Court (G. L. c. 231, § 97, and c. 239, § 5), which came before the same

judge who had heard the trial of the challenge to the foreclosure sale. We think the judge correctly concluded that the first Superior Court case had decided that Kathleen had lost her title and that McCauley had acquired legal title, if no other. On principles previously discussed in this opinion, those issues were not to be relitigated. Although it was tangentially called to the attention of the Superior Court judge, the resulting trust issue, i.e., that the real interest in the property was John's, was never pleaded and, in the final analysis, the case put to the judge was whether Kathleen or McCauley had title.

While correct in light of the then status of the previous cases, the judgment of possession would not have entered if, in the Probate Court case, a resulting trust had been imposed on McCauley's title and the house been placed at the disposal of Kathleen in accordance with the divorce judgment. It will be appropriate to stay execution of the summary process judgment pending disposition of the Probate Court case conformably with this opinion. We intimate no view on the merits of Kathleen's claim.

The judgment of dismissal in the Probate Court case bearing docket number 84E 0014-G1 in Berkshire County is reversed, and the case is to stand for trial. Execution of the summary process judgment is stayed pending final disposition of the aforementioned Probate Court case. If resolution of the Probate Court case is favorable to Kathleen, the summary process judgment is to be vacated; if favorable to McCauley, the summary process judgment, amended to reflect additional use and occupation charges, shall be executed.

*So ordered.*

BROWN, J. (concurring). I have no quarrel with the careful and erudite analysis of the majority. I, however, would reach the same result relying merely on one of the grounds put forward by the majority. A court of equity faced with allegations as serious as those made by the plaintiff may not stand by blindly and allow a party "the benefit of claim preclusion when that

[party] took steps calculated to assure the exclusion of the claim from the prior litigation." Legal doctrines and procedural niceties should never be allowed to shield chicanery or prevent fair and commonsense solutions to clear cases. Cf. *Demeter* v. *Demeter,* 9 Mass. App. Ct. 860 (1980).