Donald W. PELFRESNE,
Plaintiff–Appellant,

v.

VILLAGE OF WILLIAMS BAY, et al.,
Defendants–Appellees.

No. 88–1010.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1988.
Decided Jan. 13, 1989.

Arthur M. Scheller, Jr., Park Ridge, Ill., for plaintiff-appellant.

Richard R. Grant, Consigny Andrews Hemming & Grant S.C., Janesville, Wis., for defendants-appellees.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.[*]

CUDAHY, Circuit Judge.

In this diversity action, plaintiff-appellant Donald W. Pelfresne seeks temporary and permanent injunctive relief barring the Village of Williams Bay (the "Village") and its officers from demolishing certain buildings on property owned by Pelfresne. The Village's authority to raze the buildings derives from a state-court proceeding in which the Village won a judgment that the buildings were subject to demolition under Wisconsin nuisance law. The district court denied Pelfresne a preliminary injunction, finding that he would not likely succeed on the merits, that Pelfresne would not suffer irreparable injury through the demolition of the buildings and that the public interest weighed in favor of allowing the Village to raze the structures. Pelfresne appeals. We have determined that the Anti–Injunction Act, 28 U.S.C. section 2283, may prohibit the injunctive relief Pelfresne seeks. However, since additional factfinding is necessary to fully resolve this issue, we do not finally decide whether the Act applies to this action. On the merits of Pelfresne's request for a preliminary injunction, we affirm the district court's denial of preliminary relief.

## I.

On November 8, 1984, the Village instituted a proceeding in state court against Michael Schiessle, then the owner-of-record of six buildings in the Village. The Village sought a declaration that four of the buildings owned by Schiessle were a public nuisance, and an order authorizing the Village to raze the buildings if necessary repairs were not performed. In December of 1984, Schiessle transferred the property on which the buildings are located to Loman Eley and John Koch, who were added as parties defendant in the state nuisance suit. The state court entered a judgment authorizing the Village to raze the buildings. This judgment was affirmed by the Wisconsin Court of Appeals on March 4, 1987; on July 29, 1987, the Wisconsin Supreme Court denied further review.

On February 6, 1986, while the nuisance action was pending, Eley and Koch apparently transferred the property to one Anita Catania, although this transfer was not recorded at that time. Then, between September 15 and September 18, 1987, the property was the subject of a flurry of activity. Deeds transferring the property

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

from Eley and Koch to Catania, from Catania to Allen L. Veren, and from Veren to Pelfresne were all recorded within this four-day period. On September 28, 1987, Pelfresne filed suit in the federal district court, alleging that he was a bona fide purchaser without record or actual notice of the judgment in the Village's favor. On December 4, 1987, the district court entered an order denying a preliminary injunction from which the present appeal is taken.

## II.

A crucial issue for our disposition of this appeal is Pelfresne's relationship to Eley and Koch, who were defendants in state court. Michael Schiessle, the initial transferor, is Pelfresne's uncle. Both Michael Schiessle and Pelfresne are beneficiaries of trusts created by the will of Eleanor Schiessle. Eley and Koch served as trustees for the trusts. The Village contends that Eley and Koch purchased the property as trustees of the trust of which Pelfresne is the beneficiary. As we shall see, if this is in fact the case, Pelfresne is barred by the Anti–Injunction Act from obtaining injunctive relief in federal court.

The Anti–Injunction Act, 28 U.S.C. section 2283, provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Originally enacted in 1793, the Anti–Injunction Act expresses Congress' recognition of "the fundamental constitutional independence of the States and their courts," *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engrs.*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970); it is designed "to prevent needless friction between state and federal courts." *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940); *see also Chick Kam Choo v. Exxon Corp.*, — U.S. ——, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988); *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S.

623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (plurality opinion); *Village of Bolingbrook v. Citizens Util. Co. of Illinois*, 864 F.2d 481, 483 (7th Cir.1988).

Pelfresne's amended complaint seeks a temporary restraining order and preliminary and permanent injunction "enjoining and restraining the defendants ... from demolishing any of the houses on the property of the plaintiff." Pelfresne concedes that the state-court judgment specifically authorizes the Village to "raise [sic] and remove the buildings" on his property. Therefore, the relief Pelfresne seeks would prevent a successful state-court plaintiff from executing the judgment obtained in a prior state-court proceeding. It appears that the grant of such relief may be prohibited by the Anti–Injunction Act.

By its terms, the prohibition of section 2283 applies only to injunctions designed "to stay proceedings in a State court." In this case the judgment of the state court became final on July 29, 1987, when the Wisconsin Supreme Court denied review of Eley and Koch's appeal. However, the term "proceedings" in the Anti–Injunction Act does not merely apply to ongoing litigation before a state tribunal—the Act also bars injunctive relief which prevents a victorious state litigant from executing a state judgment.

In a classic statement of the scope of (a predecessor of) section 2283, Justice Brandeis explained:

The prohibition of [section 2283] is against a stay of "proceedings in any court of a State." That term is comprehensive.... It applies alike to action by the court and by its ministerial officers; *applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.* The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or in some other. And it governs a privy to the state court proceeding ... as well as the parties of record.

*Hill v. Martin,* 296 U.S. 393, 403, 56 S.Ct. 278, 282, 80 L.Ed. 293 (1935) (emphasis added; footnotes omitted). More recently, the Supreme Court has made clear that section 2283 also applies to injunctions which may be directed at the victorious state court litigants, rather than at the state court itself. "It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engrs.,* 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).[1]

Based on the foregoing it would appear that Pelfresne's suit falls squarely within the prohibition of section 2283. Although the suit is nominally directed at the victors

in a concluded state-court action, it is clear that the effect of injunctive relief in this case would be to completely nullify the results of the prior state proceeding.[2] However, our inquiry does not end here.

In *County of Imperial v. Munoz,* 449 U.S. 54, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980), the Supreme Court held that the Anti–Injunction Act only bars a federal litigant from obtaining an injunction against the execution of a state-court judgment if the federal litigant was a party to the state-court proceeding, or in privity with such a party. *Id.* at 59, 101 S.Ct. at 292 (quoting *Hale v. Bimco Trading, Inc.,* 306 U.S. 375, 377–78, 59 S.Ct. 526, 527, 83 L.Ed. 771 (1939)). *See also Chase Nat'l Bank v. City of Norwalk,* 291 U.S. 431, 437–38, 54 S.Ct. 475, 477–78, 78 L.Ed. 894 (1934)

1. *See also County of Imperial v. Munoz,* 449 U.S. 54, 59, 101 S.Ct. 289, 292, 66 L.Ed.2d 258 (1980) ("The view that after a state court has entered an injunction, its proceedings are concluded for the purposes of the Anti–Injunction Act [is] contrary to the square holding of the *Atlantic Coast Line* case."); *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940) ("That the injunction was a restraint of the parties and was not formally directed against the state court itself is immaterial."); *Los Angeles Memorial Coliseum Comm'n v. City of Oakland,* 717 F.2d 470, 473 (9th Cir.1983); *Piambino v. Bailey,* 610 F.2d 1306, 1331 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980); *In re Glenn W. Turner Enterprises Litigation,* 521 F.2d 775, 779 (3d Cir.1975); *Warriner v. Fink,* 307 F.2d 933, 936 (5th Cir.1962), *cert. denied,* 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963); *Evans v. St. Louis Housing Auth.,* 226 F.2d 750 (8th Cir.1955), *cert. denied,* 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 859 (1956); *Sorger v. Philadelphia Redevelopment Auth.,* 401 F.Supp. 348, 353 (E.D.Pa.1975).

The original version of the Anti–Injunction Act was passed in 1793. *See* Act of March 2, 1793, 1 Stat. 335, § 5. The consistent interpretation of the various predecessors of section 2283 has been that state court "proceedings" include steps taken to exercise rights granted by a final state-court judgment. *See, e.g., Watson v. Jones,* 80 U.S. (13 Wall.) 679, 719–20, 20 L.Ed. 666 (1872) (state marshall's transfer of property to party found entitled to it by state court); *Leathe v. Thomas,* 97 F. 136, 138 (7th Cir.1899) ("The prohibition of the statute [extends] ... to the entire proceedings from commencement of the suit until the execution issued on the judgment or decree is satisfied."); *American Ass'n, Ltd. v. Hurst,* 59 F. l, 3–6 (6th Cir.1893) (sheriff's sale pursuant to final judgment of state court);

*Ruggles v. Simonton,* 20 F. Cas. 1325, 1327 (W.D.Wis.1872) (No. 12,120) ("A sale by a sheriff upon execution of property seized by him is a 'proceeding' in the state court within the meaning and prohibition of the act").

2. Pelfresne does not argue that the current action comes within one of the express exceptions to section 2283. Nor could he. No federal statute "expressly authorize[s]" the injunction sought here. Further, although an injunction may be "necessary in aid of [the federal court's] jurisdiction" when the federal court has first acquired jurisdiction over property, *Vendo Co.,* 433 U.S. at 641–42, 97 S.Ct. at 2892–93 (plurality opinion); *Federal Savings & Loan Ins. Corp. v. PSL Realty Co.,* 630 F.2d 515, 522–23 (7th Cir. 1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), when the state court first acquired jurisdiction over the *res,* a federal court injunction is inappropriate. *See* 17 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4225, at 529–30 & n. 6 (2d ed. 1988). And if the state and federal actions here are characterized as *in personam* rather than *in rem,* Pelfresne is met with the general rule that a federal court should not enjoin a state court from exercising concurrent *in personam* jurisdiction. *See Vendo Co.,* 433 U.S. at 642, 97 S.Ct. at 2893; *Atlantic Coast Line,* 398 U.S. at 295–96, 90 S.Ct. at 1747–48. Finally, the injunctive relief requested in this case is not necessary "to protect or effectuate [the federal court's] judgments," since there is no prior federal judgment requiring protection. This exception to section 2283 is generally only applicable where an injunction is required to prevent relitigation of matters finally adjudicated in federal court. *See, Chick Kam Choo,* 108 S.Ct. at 1690; *Kerr–McGee Chemical Corp. v. Hartigan,* 816 F.2d 1177, 1179–80 (7th Cir.1987); *Dunn v. Carey,* 808 F.2d 555, 558–59 (7th Cir.1986).

(Brandeis, J.); *Colorado Eastern R.R. Co. v. Chicago, Burlington & Quincy Ry. Co.,* 141 F. 898, 903 (8th Cir.1905) (suggesting that applying Anti–Injunction Act to "strangers" to state proceeding would deny due process). The Court remanded in *County of Imperial* because

> [n]either the District Court nor the Court of Appeals addressed the question whether respondents in this case were "strangers to the state court proceeding" who were not bound "as though [they were parties] to the litigation in the state court." Unless respondents were such "strangers," the injunction was barred by the Act.

449 U.S. at 59–60, 101 S.Ct. at 292–93 (footnotes omitted).

There is a dearth of federal case law specifying criteria for determining whether a litigant is a "stranger to the state court proceeding" for the purposes of section 2283. The extant decisions do indicate, however, that the doctrine of "privity" as applied to claims of collateral estoppel should guide the decision whether a federal litigant is a "stranger" under the Anti–Injunction Act. *See Chase Nat'l Bank,* 291 U.S. at 438, 441, 54 S.Ct. at 478, 479; *Munoz v. County of Imperial,* 667 F.2d 811, 815–16 (9th Cir.) (decision on remand from Supreme Court; "'strangers' are non-parties who are not bound to previous litigation by collateral estoppel."), *cert. denied,* 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982). Therefore, in order to determine whether the Anti–Injunction Act bars the relief Pelfresne seeks, we must determine whether Pelfresne was in privity with a party to the state proceeding for the purposes of collateral estoppel.

As noted, the Village claims that Eley and Koch, who were defendants in the state nuisance suit, held the property as trustees for a trust of which Pelfresne was a beneficiary. If this is true, Pelfresne's current action would clearly be barred—a trust beneficiary is collaterally estopped by a previous adjudication for or against a trustee, so long as the trustee and beneficiary did not have adverse interests in the conduct of the prior litigation and the trustee was authorized to prosecute and defend litigation on behalf of the trust.[3]

Unfortunately, it is not entirely clear from the record whether Eley and Koch held the property as trustees for our plaintiff, Donald Pelfresne. Eley and Koch were trustees of trusts created under the will and codicil of Eleanor Schiessle. The will and codicil apparently create two separate trusts: one for the benefit of Donald Pelfresne and his brothers, and the other for the benefit of Michael Schiessle, Pelfresne's uncle, who happens to be the individual who sold the property to Eley and Koch. However, the trustees seem to believe that the will and codicil create a single trust, with Schiessle and Pelfresne as co-beneficiaries; their testimony also indicates that they held the property as trustees for, among others, Donald Pelfresne.[4] Pel-

---

**3.** *See, e.g., Kerrison v. Stewart,* 93 U.S. (3 Otto) 155, 160, 23 L.Ed. 843 (1876); *Estate of Baumann,* 201 Cal.App.3d 927, 247 Cal.Rptr. 532, 535–36 (1988); *Roche v. Roche,* 22 Mass.App. 306, 493 N.E.2d 523, 525 (1986); *Grimm v. Rizk,* 640 S.W.2d 711, 716 (Tex.App.1982), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 714, 79 L.Ed.2d 177 (1984); *Only Collections, Inc. v. County of Cochise,* 121 Ariz. 310, 589 P.2d 1342, 1344–45 (App.1978); *Anderson v. Elliott,* 1 Ill.App.2d 448, 453–54, 117 N.E.2d 876, 879 (1st Dist.1954); *In re Clemens' Estate,* 198 Misc. 1049, 101 N.Y.S.2d 367, 369 (N.Y.Cty.Surr.Ct.1950); *but see Parkerson v. Chapman,* 179 F.2d 208, 214–15 (4th Cir.) (Virginia law), *cert. denied,* 339 U.S. 953, 70 S.Ct. 841, 94 L.Ed. 1366 (1950); *cf. In the Matter of: Met–L–Wood Corp.,* 861 F.2d 1012, 1017 (7th Cir.1988) ("The trustee in bankruptcy is the creditors' representative, and therefore a judgment for or against the trustee is res judicata in a suit on the same claim by a creditor, provided no conflict of interest made the trustee's representation inadequate.") (citation omitted); *McCrocklin v. Fowler,* 285 F.Supp. 41, 43 (E.D. Wis.1968) (beneficiary of decedent's estate in privity with administrator of estate for res judicata purposes), *aff'd,* 411 F.2d 580, 582 (7th Cir.1969).

**4.** *See Village of Williams Bay v. Schiessle,* No. 85 CV 708, trans. of day 2 at 66, 69 (Walworth Cty.Cir.Ct. Dec. 3, 1985) (testimony of John P. Koch); Examination of Lommen D. Eley at 12–13, *Petition of Lommen D. Eley & John P. Koch Under Wisconsin Statutes 66.05 v. Village of Williams Bay,* No. 85 CV 708 (Walworth Cty. Cir.Ct. Nov. 6, 1985).

fresne categorically denies this.[5] Judge Reynolds' decision does not definitively resolve this issue:

I think on the first point, going back to the question of anti-injunction, I think it's unlikely that on the merits of this Court's jurisdiction ... I think it's unlikely that this Court has. I think the policy is quite clear in the anti-injunction statute that we are not to enjoin the orders of State Courts. I think under the facts of this case the plaintiff is not a stranger to this property. He may have just bought it, but it's been involved in the family for some time. That all this time that this was going on, as they use the legal term, he [was] privy.

*Pelfresne v. Village of Williams Bay,* No. 87 C 1109, trans. at 99–100 (E.D.Wis. Dec. 3, 1987). Given the current state of the record, we are not disposed to resolve in the first instance the question whether Donald Pelfresne was, in fact, in privity with Eley and Koch, the defendants in the state-court nuisance proceeding. We therefore leave the issue of the applicability of the Anti–Injunction Act for further determination by the district court. There are other grounds on which the district court may be sustained.

### III.

This court recently summarized the standards for the grant of a preliminary injunction in *Faheem–El v. Klincar,* 841 F.2d 712, 716–17 (7th Cir.1988) (en banc):

A district court must consider four factors in deciding whether a preliminary injunction should be granted. These factors are: 1) whether the plaintiff has a reasonable likelihood of success on the merits; 2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; 3) whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant; and 4) whether the granting of a preliminary injunction will disserve the public interest. Our review of a district court's decision to grant a prelimi-

nary injunction is governed by the standards set forth in *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429[, 1437] (7th Cir.1986)[:]

factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given de novo review.... However, the ultimate evaluation and balancing of equitable factors is a highly discretionary decision and one to which this court must give substantial deference.

*See also Burlington Northern R.R. Co. v. United Transp. Union,* 862 F.2d 1266, 1271, 1280, n. 11 (7th Cir.1988).

Judge Reynolds employed the four-factor analysis outlined above in determining that Pelfresne was not entitled to a preliminary injunction. Since we do not find that Judge Reynolds abused his discretion in refusing to grant a preliminary injunction, we affirm his judgment.

We first consider the likelihood that Pelfresne will prevail on the merits. In Wisconsin, a putative bona fide purchaser of real estate must demonstrate that he or she purchased the property without actual or record notice of a prior adverse claim. Wis.Stat. § 706.09. As Judge Reynolds noted, there is substantial doubt whether Pelfresne could establish that he took the property without notice of the Village's claim. The circumstances surrounding Pelfresne's acquisition of the property suggest that he had actual notice of the judgment in the Village's favor. Pelfresne purchased the property at the direction of his uncle, Michael Schiessle, without conducting any independent inquiry into the status of the property's title. Although Pelfresne testified that Schiessle did not tell him about the adverse judgment, the court could certainly infer that Pelfresne learned of the Village's claim during his conversations with his uncle, who was after all a named defendant in the state court proceeding. There is also a substantial question whether Eley and Koch's status as defendants in the state-court action resulted in the imputation of notice to Pelfresne. Finally, the title search which Pelfresne

---

**5.** Deposition of Donald W. Pelfresne at 32, *Pelfresne v. Village of Williams Bay,* No. 87 C 1109

(E.D.Wis. Nov. 5, 1987).

commissioned *after* his purchase discovered the judgment in the Village's favor; however, the title abstract erroneously reported only that aspect of the judgment which awarded costs to the Village, without noting the far more important fact that a raze order had been entered.[6] Therefore there was evidence supporting an inference that Pelfresne had both actual and record notice of the Village's claim.

It is also not clear that Pelfresne would suffer irreparable injury if a preliminary injunction were not granted. As a general rule, interference with the enjoyment or possession of land is considered "irreparable" since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute. *See, e.g., United Church of the Medical Center v. Medical Center Comm'n*, 689 F.2d 693, 701 (7th Cir.1982) (uniqueness of land "settled beyond the need for citation"). However, it is not clear that a similar rule should apply to buildings located on a given piece of real estate, since the buildings, unlike the land, can be repaired or replaced if injured or destroyed. Although Pelfresne's testimony indicates that, in general, the buildings' roofs are intact and their floors are not sagging, it does not suggest any particular reason why these buildings are irreplaceable if Pelfresne is awarded money damages after the Village razes the structures. We also note that the buildings are not currently occupied; their demolition will not displace any commercial or residential tenants. Judge Reynolds' conclusion that Pelfresne has an adequate legal remedy is thus amply supported by the record.

In his bench ruling denying the preliminary injunction, Judge Reynolds also noted that the public interest weighed in favor of allowing the Village to raze the buildings. The Circuit Court of Walworth County had found, in an adversarial proceeding, that the Village was empowered to raze the

buildings under Wisconsin Statutes section 66.05. The state court's judgment necessarily determined that the buildings were "so old, dilapidated or ... out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation, occupancy or use," since this is the standard under which the propriety of a raze order is decided. The state court's judgment was affirmed on appeal. Under these circumstances, it was certainly well within Judge Reynolds' discretion to conclude that the public interest would be furthered by allowing the demolition to proceed.

For these reasons, the judgment of the district court denying a preliminary injunction is affirmed. On remand, in connection with the request for a permanent injunction, the district court should determine whether injunctive relief is barred by the Anti–Injunction Act before conducting further proceedings on the merits of Pelfresne's claim.

AFFIRMED.

---

6. Of course, the fact that Pelfresne did not examine the land records prior to his purchase of the property is irrelevant to an imputation of record notice. "Under the recording acts a conclusive presumption arises that a purchaser knows every conveyance of property recorded which affects the title to the property, whether or not the purchaser examines the public records." *Kordecki v. Rizzo*, 106 Wis.2d 713,

719, n. 5, 317 N.W.2d 479, 483 n. 5 (1982) (quoting *Bump v. Dahl,* 26 Wis.2d 607, 615, 133 N.W.2d 295, 134 N.W.2d 665 (1965)); *see also Leimert v. McCann,* 79 Wis.2d 289, 299, 255 N.W.2d 526, 531 (1977) ("the statute contemplates inquiry prior to purchase, and failure to inquire at that time cannot be excused by [ ] subsequent [events]").