GEORGE DITSON JONES, GEORGE H. HOWELL, JR., WINONA L. JACKSON AND OWEN E. JACKSON, APPELLANTS, *v.* WILLIAM FREE, RESPONDENT. WESTERN GEOTHERMAL, INC., INTERVENOR AND RESPONDENT.

No. 5107

January 9, 1967                    422 P.2d 551

[Rehearing denied February 13, 1967]

*Springer & Newton,* of Reno, and *Roy B. Woolsey,* of Newport Beach, California, for Appellants.

*Bible, McDonald & Carano,* and *Robert H. Moore,* of Reno, for Respondent William Free.

*Vargas, Dillon, Bartlett & Dixon,* of Reno, for Intervenor and Respondent Western Geothermal, Inc.

## OPINION

By the Court, COLLINS, J.:

This is an appeal by George Ditson Jones, George H. Howell, Jr., Winona L. Jackson and Owen E. Jackson, defendants below and officers and directors of Transcontinental Oil Co., Inc., a Nevada corporation, from various orders of the trial court. The orders complained of are: (1) an order entered by the trial court authorizing Harry C. Levy, receiver of Transcontinental Oil Co., Inc., to settle a controversy with Western Geothermal, Inc., Intervenor; (2) an order dismissing appellants' counterclaims; (3) an order denying the setting aside of the foregoing two orders. Transcontinental apparently held a lease on some land in Imperial Valley, California, valuable for production of steam from wells. It entered into a joint venture contract concerning the leasehold interest with Western Geothermal for purposes of development of the steam to produce electrical energy and other byproducts. Transcontinental encountered financial problems, and was beset with internal difficulties among the officers, directors and stockholders. It also became ensnarled in a controversy with Western Geothermal over their contract.

William Free, a substantial stockholder of Transcontinental, commenced this action, which among other things, sought the appointment of a receiver of Transcontinental pursuant to NRS Chapter 78. Western Geothermal was permitted to intervene and joined in the relief requested. Harry C. Levy of Las Vegas, Nevada, was appointed and qualified as receiver. His appointment was immediately attacked for various reasons, but was sustained by this court in Transcontinental Oil Co. v. Free, 80 Nev. 207, 391 P.2d 317 (1964).

Following that decision the receiver embarked upon his duties on behalf of Transcontinental under supervision of the district court. Transcontinental had no assets except the leasehold interest in the steam lands. The record indicates some evidence of a default procedure by the owner and lessor of the steam lands because of failure to perform in accordance with the terms of the lease. There were liens and claims against

the steam land for unpaid taxes, judgments and other proceedings clouding the title which were the obligation of lessee to correct. The receiver needed money to correct those problems, but had none. Finally, after considerable negotiation among the receiver and his attorney, Western Geothermal and its attorney, the appellants through their attorney of record, Toy Gregory, Sr., Esquire, of Las Vegas, a form of agreement was reached dealing with the leasehold interest and particularly the joint venture agreement between Transcontinental and Western Geothermal. The new agreement provided, among other things, that Western Geothermal would pay over immediately $50,000 to the receiver to permit him to meet expenses of the receivership and to clear up clouds on the title of the leasehold property. There is no question that the agreement substantially modified the rights of Transcontinental and Western Geothermal under the original joint venture agreement, particularly in the area of drilling requirements and the nature and type of interest retained by Transcontinental. The agreement also provided for dismissal of counterclaims pleaded by Transcontinental against Western Geothermal and Free.

Receiver petitioned the district court for authority to execute the agreement. It is admitted by the parties and the court expressly found that notice of the hearing of the petition was given to Mr. Gregory as attorney for appellants. A day or so before the hearing Mr. Gregory had been seriously injured in an automobile wreck. Appellants neither in person nor through their counsel appeared at the hearing. Mr. Gregory made no request for continuance because of his accident or injuries. At the hearing the receiver appeared with his counsel and testified, urging the court to grant him authority to execute the agreement. Western Geothermal, through its counsel, likewise appeared, examined the receiver and joined in urging the court to grant authority to the receiver to enter the agreement. The court gave its permission. The agreement was executed by the parties. Western Geothermal paid over the $50,000 and the receiver went about clearing the clouds on the title of the leasehold property and satisfying the expenses of the receivership.

Subsequently the trial court dismissed the counterclaims of Transcontinental and Salton Sea against Free and Western Geothermal as a condition of the agreement it had allowed the receiver to enter. Its first order was made ex parte. On appellants' motion to reconsider the order with proper notice to all parties, it re-affirmed its order of dismissal, and ruled there were no further issues to be tried in the lawsuit. Appellants and other parties were then served by Western Geothermal with

a document entitled "Notice of Entry of Judgment," which appellants contend commenced the time running within which they could take appeal to this court from final, appealable orders of the trial court.

We conclude the errors complained of by appellants are not well taken and affirm the orders of the court below.

The question of the appointment of Harry C. Levy as receiver of Transcontinental under NRS Chapter 78 is res judicata and appellants are bound thereby. That very question was ruled upon by this court in Transcontinental Oil Co. v. Free, supra, at pages 210–211, where we said:

"Finally, Transcontinental insists that Free did not make a proper showing to justify the appointment of a receiver and that the district court abused its discretion in granting his request. This argument is not entitled to credit. NRS 78.650(1) lists 10 circumstances, any one of which will authorize the appointment of a temporary receiver upon application by a holder of 10% of the outstanding stock. For the purposes of this opinion it is sufficient to note that Free alleges four of them in his amended verified complaint. The affidavit of Kenneth P. Dillon alleges one of them, viz., danger to the public. Clearly, the showing was sufficient. Underwriters, Inc. v. District Court, 61 Nev. 42, 113 P.2d 616, 115 P.2d 932."

The very point being once raised and ruled upon, we will not consider it further. Tomiyasu v. Golden, 81 Nev. 140, 400 P.2d 415 (1965). There was (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action; (4) identity of the quality in the person for or against whom the claim is made. Smith v. Gray, 50 Nev. 56, 67, 250 P. 369 (1926).

The orders, which are in a sense final orders and terminate the litigation, are appealable. NRCP 72(b)(1);[1] 4 C.J.S., Appeal and Error § 132, nn. 40.5, 45.15, § 147, n. 84; State v. Burton, 44 N.E.2d 506, 508 (Ind. 1942); Jordan v. Burbach, 330 S.W.2d 249, 252 (Tex.Civ.App. 1959); Northern Nevada Loan Association v. Cazier, 49 Nev. 115, 118, 239 P. 395, 396 (1925); cf. Alper v. Posin, 77 Nev. 328, 363 P.2d 502 (1961); Nevada First National Bank v. Lamb, 51 Nev.

[1]NRCP 72 "(b) Appealable Determinations. An appeal may be taken:

"(1) From a final judgment in an action or proceeding commenced in the court in which the judgment is rendered."

162, 271 P. 691 (1928). Appellants, so far as the record reveals, are officers and directors of Transcontinental, and as such are entitled to entertain this appeal. This court said in Golden v. District Court, 31 Nev. 250 (1909), at 263, 101 P. 1021, at 1026: "We think, however, that the directors are necessary parties. They of necessity have a financial interest in the corporation, and are the ones who are intrusted with its management by the stockholders. * * * An order dissolving a corporation and placing its affairs in the hands of a receiver, not only effects a radical change in the legal status, but ousts the control of its affairs by the board of directors as such."

Appellants complain most strongly about the trial court's order authorizing the receiver to enter a compromise agreement on behalf of Transcontinental with Western Geothermal concerning the joint venture contract relating to the leasehold interest in the steam lands. Pursuant to this same agreement the counterclaims were dismissed and the litigation for all intents and purposes ended. Appellants say the action of the trial court; (a) constituted an erroneous delegation of judicial power beyond the jurisdiction of the court; (b) constituted the making of a new contract between the litigants; (c) deprived them of property without due process; (d) exceeded the powers of the receiver who they contend had powers only under NRS Chapter 32 and not NRS Chapter 78.

The last point is quickly disposed of because the appointment was clearly under NRS Chapter 78, approved by this court in Transcontinental Oil Co. v. Free, supra, and is res judicata.

We note that NRS Chapter 78 deals exclusively with private corporations, not joint adventurers, individuals, partners or otherwise. Transcontinental Oil Co. admittedly is a private Nevada corporation, and so far as the receivership is concerned is the only corporation (even though a party to the joint venture agreement with Western Geothermal) for whom receivership was sought. To say that a receiver appointed to handle the affairs of one private corporation could, without more, also deal in the same manner with the affairs of another private corporation (Western Geothermal) is without authority anywhere. It is said in Clark on Receivers, Third Edition, Vol. 1, Sec. 11(a), pages 13 and 14:

"(a) Receiver appointed by court. A receiver appointed by the court is a person who by such appointment becomes an officer of the court to receive, collect, care for, administer, and dispose of the property or the fruits of the property of another

or others brought under the orders of court by the institution of a proper action or actions.

"A receiver appointed by the court is an arm or hand of the court, and as said above, an officer of the court and a representative of the court.

"The court itself, having assumed jurisdiction, obtains by its orders the control of the property. The receiver is but the court's officer. He is subject to the court's directions and orders and in the discharge of his official duties is entitled to apply to the court for instructions.

"After the appointment of the receiver is effected, the relation of the receiver and the original defendant or owner is that of caretaker and owner."

A receiver appointed by a court under NRS Chapter 78 has broad powers, subject of course to the continuing supervision and approval of the court. NRS 78.635 (2) sets forth that power and authority and states:

"(a) To demand, sue for, collect, receive and take into his or their possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property, of every description of the corporation; and

"(b) To institute suits at law or in equity for the recovery of any estate, property, damages or demands existing in favor of the corporation; and

"(c) In his or their discretion to compound and settle with any debtor or creditor of the corporation, or with persons having possession of its property or in any way responsible at law or in equity to the corporation at the time of its insolvency or suspension of business, or afterwards, upon such terms and in such manner as he or they shall deem just and beneficial to the corporation; and

"(d) In case of mutual dealings between the corporation and any person to allow just setoffs in favor of such person in all cases in which the same ought to be allowed according to law and equity."

Subparagraph (c) specifically authorizes a receiver to "compound and settle with any debtor or creditor of the corporation, or with persons having possession of its property or in any way responsible at law or in equity to the corporation at the time of its insolvency or suspension of business, or afterwards, upon such terms and in such manner as he or they shall deem just and beneficial to the corporation; * * *." Clark

on Receivers, Third Edition, in construing the power of receivers to compromise claims, says in Vol. 2, Sec. 366, page 623:

"When a receiver has been authorized by the court to collect claims, he does so as a part of the court's equitable power to preserve the res. In preserving the res the court exercises discretion, which may go so far as to determine that it is for the best interest of the receivership to accept part of a claim, rather than take a chance and suffer the hazard of a prolonged proceeding demanding the full amount. The court's order to a receiver to compromise a claim or claims should be very definite and clear."

In Vol. 3, Sec. 655, page 1147, he says:

"A receiver when administering or settling an estate of one kind or another, or operating a business under orders of court, is frequently confronted with the proposition: Shall he compromise a claim for or against the estate, or shall he sue or stand suit? If the receiver's order of appointment expressly authorizes the receiver to compromise such claims, then he must use his discretion and best business judgment as to matters too small to present to the court. However, it is better practice and the better part of wisdom to go to the court and ask the court's instructions as to compromising large or substantial claims. In addition to going before the court, it is further advisable to notify all parties or creditors who may be vitally interested in such a compromise. Although the receiver may not compromise claims without the order of court, nevertheless his acts of compromising claims subsequently may be ratified. * * *"

Here the district court allowed the compromise proposed by receiver. It had substantial evidence before it, and we will not disturb its order. Furthermore, neither appellants nor their counsel appeared at the hearing and offered objection to it. They should not be heard to complain now.

Clark on Receivers, Third Edition, Vol. 2, Sec. 423, page 711, states: "The receiver by accepting the receivership does not adopt the contracts and obligations of the defendant." He cites as authority for that statement Peabody Coal Co. v. Nixon, 226 F. 20 (8 Cir. 1915). In that case receivers were appointed for a railroad company. The railroad had a contract with a coal company to purchase certain quantities of coal at a price determined by a complex formula. Receivers notified the coal company they would not be bound by the contract and asked the chancellor to approve their action. The coal company

opposed the action of the receivers and sought to convince a master to whom the matter was referred for the taking of evidence, that the contract was in the best interest of the receivers and it should affirm the contract. In the meantime negotiations were undertaken between the receivers and the coal company to compromise the matter and reach a negotiated settlement. This failed. The court stated at page 22 of the report, "We had occasion in another case (Ry. Co. v. Lusk et al., 224 Fed. 704) at this term to observe that it is not the rule that the contract of the owner of a trust estate is binding on the receivers until renounced, but, contra, that the receivers are not bound by the contract until they have affirmed it and assumed its burdens under the direction of the court. We need not say much more.* * *" The court approved the receivers' renouncement of the contract in its entirety.

Clark on Receivers, Third Edition, further states, Vol. 2, Sec. 423, page 711, "Ordinarily, the court will not order the receiver to perform contracts which are not beneficial to the estate represented by the receiver." The record in this case indicates the receiver, considering all aspects of the problem facing Transcontinental, felt it was in the best interest of the company to compromise the claim it had against Western Geothermal under the joint venture agreement in the leasehold of the steam lands. This proposal was presented to the court for its instruction. The court approved and authorized the compromise. We see no error.

Other points were urged, but since they will not affect the result we decline to pass upon them.

Affirmed.

THOMPSON, C. J., and ZENOFF, J., concur.