Louis BRENNAN, Individually and as a trustee; Cynthia B. Brennan, individually and as a trustee; Trinity Family Church; Creature Care Foundation, a California corporation; Frederick R. Kreuger and Teresa Jan Kreuger, Plaintiffs,

v.

EMDE MEDICAL RESEARCH, INC.; Robert B. Stone; Elizabeth Stone; E.J. Snyder; Mike Snyder; James Buckingham; Does I Through X, inclusive, Defendants.

No. CV–R–83–396–ECR.

United States District Court, D. Nevada.

Dec. 24, 1986.

Richard O. Kwapil, Jr., Reno, Nev., for plaintiffs.

Ronald J. Logar, and Hamilton & Lynch, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

This case comes to the Court by way of a report and recommendation by the United States Magistrate. In this action, the plaintiffs have filed suit under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), contending that the actions

of the defendants in allegedly preventing them from exercising their preemptive rights in the newly issued shares of a particular corporation violated the Act's directives. The defendants have moved for summary judgment, contending that a previous state court action between some of the parties in this suit has disposed of the claim under the 1934 Act, and has already resolved all relevant fact issues in this action. In the opposition to the Magistrate's report, the defendants also attempt to argue the merits of the plaintiff's § 10(b) claim. The defendants did not raise these issues in the original summary judgment motion and they will not be considered now. If defendants so choose, they may file another summary judgment motion on these grounds at a later date. The Court will presently consider only those claims properly raised in the first summary judgment motion. On the grounds of res judicata and collateral estoppel, therefore, the defendants claim that the plaintiffs are prevented from bringing this suit.

FACTS

In 1977, EMDE MEDICAL, one of the defendants in this suit, was incorporated as a Nevada corporation for the primary purpose of developing and marketing medical devices. The corporation had an initial authorized capital stock issue of 15,400 shares at $10.00 par value. Plaintiffs Louis Brennan and Frederick Kreuger were among the incorporators, and subscribed to 1100 shares each of the initial issue.

In February of 1978, the corporation authorized its officers to apply to increase the authorized capital stock of the corporation to 50,000 shares at the same par value. At that time, 12,650 of the original 15,400 shares had been subscribed. At this same meeting, the corporation also authorized a three for two stock split. Later in the year, the corporation was in financial difficulties, and required loans and advances from shareholders in order to stay alive. The company then instituted a warrant program, in the course of which the shareholders would loan funds themselves or guarantee other loans to the company. In return, these shareholders would receive warrants authorizing them to purchase additional shares at an established price within the given time frame. Several of the plaintiffs apparently participated in this program, through which they increased their ownership percentage in the corporation.

Previous to April, 1980, the corporation's Articles had contained a standard preemptive rights clause, which enabled a shareholder to subscribe for or purchase a proportional part of any new shares issued by the corporation. In April of 1980, however, the corporation, by a majority vote of the shareholders present, voted to amend the Articles so as to delete this provision. This amendment was not recorded with the Secretary of State until September, 1983.

In late 1979 and early 1980, a dispute had arisen among some of the shareholders regarding the invention of a modification to one of the patented EMDE devices. Donald Bailey, the corporate officer in charge of research and development, and invented this new device with EMDE resources under an agreement which provided that all future inventions would belong to EMDE. He and other EMDE stockholders created a new corporation to patent and market the modified device.

As a result of the development of this new device by another corporation, plaintiffs Louis Brennan and Frederick Kreuger joined in March, 1980 with a group of other persons not party to this action in making a demand upon EMDE for the right to inspect the corporation's books and records. The corporation resisted this demand, and this group then filed a petition for a writ of mandamus in state court to compel disclosure of the documents. Subsequent to the filing of that suit, the parties to that action who are not plaintiffs in this federal action settled their claims. The defendants then moved to dismiss the petition, contending that the remaining parties, Louis Brennan and Frederick Kreuger, lacked the requisite fifteen percent of the shares of the corporation to force disclosure of the corporate information. Brennan and Kreuger

argued in response that they had together initially owned over nineteen percent of the shares, but that the defendants had illegally diluted their ownership interest by fraudulently amending the Articles to do away with preemptive rights, and then issuing more shares. The state court, however, granted the defendants' motion for summary judgment, finding, apparently, that Brennan and Kreuger did lack the necessary fifteen percent to inspect the corporate books.

## DISCUSSION

In their motion for summary judgment in this Court, the defendants argue that the present action is barred entirely by the doctrine of res judicata, and, alternatively, that various critical fact issues have been resolved by collateral estoppel. The Magistrate has examined the motion, the opposition, and the reply, and has recommended that the summary judgment motion be denied. Initially, however, the Magistrate found it necessary to examine the issue of standing *sua sponte*, and concluded that the plaintiffs did have standing to sue.

## STANDING TO SUE

█ Section 10(b) of the Securities Exchange Act of 1934 provides in part that [i]t shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange—

> . . . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. The Supreme Court has long held that there exists a private cause of action under this statute, but has also required that the plaintiff seeking private relief must be a "buyer or seller" of securities in order to have standing to sue. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975). The Ninth Circuit, however, has read the *Blue Chip Stamps* case broadly, such that the holder of a contract to buy or sell who is prevented from consummating the transaction because of fraud will have standing under the Act. *See Mosher v. Kane,* 784 F.2d 1385, 1389 (9th Cir.1986). In this case, therefore, the question of standing resolves itself to a determination of whether preemptive rights created in the Articles of a corporation can be viewed as a contract to buy or sell securities.

In finding that preemptive rights were contractual enough in nature to allow standing under § 10(b), the Magistrate relied upon *Roberson v. Cate,* 454 F.Supp. 13 (E.D.Tenn.1978). In this case, the plaintiff alleged that he had purchased less stock than he could have under a binding shareholder's agreement because of the defendant's allegedly fraudulent misrepresentations about the stock's value. The defendant, however, moved to dismiss the case for lack of standing, in that the plaintiff was merely an aborted purchaser under the agreement.

The court found the defendant's standing argument unavailing. Where the "plaintiff possessed a 'contractual right' to purchase securities and allegedly failed to exercise that right because of a violation of Section 10(b) and Rule 10b–5," the court found, "then the plaintiff would have standing to bring this action." *Id.,* at 14. In this case, continued the court, the plaintiff alleged that he had a preemptive right to purchase 50% of the shares held by the defendant by virtue of the binding shareholder agreement. *Id.* Because of this binding contract, the court found that the plaintiff had the requisite contractual rights to be an aborted buyer for the purposes of § 10(b).

In the present case, the plaintiff held a preemptive right in the corporation's newly issued shares that was created by the Articles of the corporation, not by a binding shareholder agreement. This distinction is

not critical, however, in that contractual rights in the common law sense do not appear to be required to state a cause of action under § 10(b). *See Mullen v. Sweetwater Development Corp.,* 619 F.Supp. 809, 814 (D. Colo. 1985) ("purchase and sale" within the meaning of the 1934 Act is not necessarily used in the common law sense). It appears that the 1934 Act requires the existence of a binding agreement for the transfer of securities in order to state a cause of action, regardless of the form of the agreement. *See Dudley v. Southeastern Factor and Finance Corp.,* 446 F.2d 303, 306 (5th Cir.) *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); *McCloskey v. McCloskey,* 450 F.Supp. 991, 996 (D.Pa.1978); *Carpenter v. Hall,* 311 F.Supp. 1099, 1106 (D.Tex.1970). In this sense, preemptive rights in Nevada corporations fall within the definition of "contracts for purchase" of securities, in that such rights are binding on the corporations and are enforceable in the courts. *See* NRS § 78.265.

In addition, it appears that plaintiffs have standing in this case, as the mere issuance of new stock by a corporation can constitute a "sale" for the purposes of the 1934 Act. In *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2nd Cir.1968) *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), the corporation offered a large number of treasury shares to its controlling shareholder at a vastly inadequate price as part of a conspiracy to enrich him. The defendant moved for summary judgment, contending that there had not been a "sale" within the meaning of the 1934 Act, and that the plaintiff was thus without standing.

The Second Circuit disagreed. The issuance of stock by the corporation alone was a "sale" sufficient to implicate the directives of the 1934 Act, the court found. *Id.,* at 219. The fact that the plaintiffs in the action had not actually bought, nor had tried to buy the stock was irrelevant, in the court's estimation, as the issuance of the shares appeared to have taken place under circumstances that smacked strongly of fraud. *Id.* Thus, the court concluded that

the issuance of stock alone was a "sale" for the purposes of the Act. *See Dasho v. Susquehanna Corp.,* 380 F.2d 262 (7th Cir.) *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); *Mader v. Armel,* 402 F.2d 158 (6th Cir.1968) *cert. denied,* 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969); *Hooper v. Mountain States Security Corp.,* 282 F.2d 195 (5th Cir.1960) *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1960).

In the present case, the plaintiffs have alleged that the newly issued shares of the corporation were issued fraudulently, in that they were created in furtherance of a plan to dilute the ownership percentage of the complaining shareholders. Taken together with the alleged fraud in the amendment of the Articles of the corporation, plaintiffs' allegations that the issuance of the new shares in the present case fits into a plan to defraud them. This is not to say that the amendment of the Articles and the issuance of the shares was indeed fraudulent. The court merely finds that the plaintiffs have standing to sue by virtue of their allegations surrounding the Articles' amendment and the issuance of the new shares.

RES JUDICATA

The Magistrate has also concluded that the motion for summary judgment should be denied on its merits, in that no res judicata effect should be accorded the state court judgment. As the Ninth Circuit has noted, "[t]he doctrine of res judicata embraces two distinct doctrines, claim preclusion and issue preclusion (or collateral estoppel), that bar, respectively, a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action." *McClain v. Apodaca,* 793 F.2d 1031, 1033 (9th Cir.1986). Because the two doctrines are theoretically and practically distinct, the Court must examine them separately. *Id.,* at 1033, n. 2. Further, because of the confusion surrounding the nomenclature of the doctrines, the Court shall denote res judicata

as "claim preclusion," and collateral estoppel as "issue preclusion."

CLAIM PRECLUSION

■ In finding that no preclusive effect should emanate from the state judgment in this case, the Magistrate relied on federal law of claim preclusion. It appears, however, that when a federal district court, sitting as the second forum (F2), is called upon to give claim preclusive effect to a state court judgment (F1), the F2 court must analyze the F1 judgment in accordance with that state's law of claim preclusion, not that of the federal courts.

The United States Supreme Court has indicated this in *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In that case, the petitioner brought suit in the Ohio state courts for breach of contract and wrongful interference with contractual relations as a result of the respondent's decision not to renew her contract as a school administrator. *Id.*, at 79, 104 S.Ct. at 895. Shortly after winning that suit, the petitioner filed suit in the federal district court, alleging that her contract had not been renewed as a result of her activities regarding school desegregation and that her constitutional rights has therefore been infringed. *Id.* The district court, however, granted the respondent's motion for summary judgment on the grounds of claim preclusion. The petitioner objected to this holding, arguing that 42 U.S.C. § 1983 contains an implied exception to the full faith and credit statute, 28 U.S.C. § 1738. By virtue of this exception, the petitioner argued, the federal district courts were not obligated to give the state courts' judgment full faith and credit when the second action under § 1983 is brought in federal court.

The Supreme Court declined to adopt this position. Initially, the Court noted that the full faith and credit statute, like its constitutional counterpart, requires that

"[s]uch Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

*Id.*, at 80, 104 S.Ct. at 895, *citing* 28 U.S.C. § 1738. This statute, the Court found, requires the federal courts, when sitting as F2 courts, to give the same preclusive effect to F1 state court judgments as would be given those judgments under the law of the State in which they are rendered. *Id.* Although the federal courts are free to look to federal common law when examining *federal* F1 judgments, the Court cautioned that "Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgment emerged would do so...." *Id.*, *citing Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Therefore, the Court concluded that the preclusive effect of the Ohio judgment on a concurrent state and federal claim must be determined by Ohio law, in the absence of any modification of § 1738 by the Civil Rights statute. *Id.* Because the Court found that Congress had not intended to amend § 1738 when enacting the Civil Rights Act, the petitioner's second action was barred by application of Ohio preclusion law. *Id.*, 465 U.S. at 82–85, 104 S.Ct. at 896–898. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1034 (9th Cir.1985).

In examining the state court's judgment in this case, therefore, this Court must apply the law of the State of Nevada regarding claim preclusion. Under Nevada law, the doctrine of claim preclusion provides that a final, valid judgment, when rendered on the merits, is a bar to subsequent claims which were or could have been raised in the first action between the same parties or those in privity with them upon the same cause of action. *See York v. York*, 99 Nev. 491, 664 P.2d 967, 968 (1983); *Jones v. Free*, 83 Nev. 31, 422 P.2d 551, 553, *cert. denied*, 389 U.S. 823, 88 S.Ct. 57, 19 L.Ed.2d 76 (1967); *see also*

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). Nevada law thus contemplates a four step analysis for adjudging claim preclusion issues.

## FINALITY AND VALIDITY

■ In the present case, it appears that the state court judgment is both valid and final. There are no personal jurisdiction defects which would render the judgment void as a matter of Nevada and constitutional law. *See* NRS § 14.065. Further, the parties have taken no appeal from the entry of judgment in the state case. Nevada law indicates that a judgment is final once the litigation has come to an end. *See Paul v. Pool*, 96 Nev. 130, 605 P.2d 635, 637 (1980). It is clear that the state court litigation is at an end in this case, in that the time for appeal has expired with neither party seeking to perfect appeal to the state's highest court. *Id.*

## ON THE MERITS

It also appears that the state court judgment was rendered on the merits. Although there is no Nevada case directly stating the point, it has long been held that summary judgment, when granted for the defense, is a decision on the merits which will satisfy the dictates of the state claim preclusion rules. *See Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979); *Makin v. Liddle*, 108 Idaho 67, 696 P.2d 918 (1985); *Gideon v. Bo-Mar Homes, Inc.*, 205 Kan. 321, 469 P.2d 272 (1970). *See also Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir.1979) *cert. denied*, 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980); *Renfro v. Forman*, 99 Nev. 70, 657 P.2d 1151 (1983) (discussing motion to dismiss). When federal courts reach a position where the state courts have not spoken on a certain topic, it is their duty to apply the law which the highest court of the state would apply if it were presented with the identical question. *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir.1984). In the present circumstance, the Supreme Court of Nevada would be certain to find that a grant of summary judgment is equivalent to judgment on the merits. This Court will therefore find this judgment also to be on the merits.

## PARTIES AND PRIVIES

■ It does seem, however, that there is a party problem in this case. The only plaintiffs in this action which were parties to the first lawsuit are Mr. Brennan and Mr. Kreuger. Neither Ms. Brennan, Ms. Kreuger, the Trinity Family Church, nor the Creature Care Foundation were party to the previous lawsuit. Unless it can be argued that they are the privies of Mr. Brennan and Mr. Kreuger, therefore, no claim preclusion can operate against these latter parties. *See Jones v. Free, supra.*

In *Paradise Palms Community Ass'n v. Paradise Homes*, 89 Nev. 27, 505 P.2d 596, *cert. denied*, 414 U.S. 865, 94 S.Ct. 129, 38 L.Ed.2d 117 (1973), which abolished mutuality of estoppel in Nevada, the Nevada Supreme Court discussed what constituted a "privy" under Nevada law. In this case, the defendant sought to bind two plaintiffs who alleged that they had not been party to the previous action, by holding them accountable for a default judgment entered in the first case.

In holding that these defendants were accountable for that previous judgment, the court noted that "[a] privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession or purchase." *Id.*, at 599, *quoting Bernhard v. Bank of America Nat. Trust & Sav. Ass'n.*, 19 Cal.2d 807, 122 P.2d 892, 894 (1942). In this case, the court did not even need to rely on the definition of privy it had stated, in that the plaintiffs all were parties to the previous action. The court thus allowed preclusive effect to issue against them. *Id.*

Under Nevada law, therefore, preclusive effect cannot operate against the plaintiffs in this lawsuit who were not parties to the previous state court action. The Court notes that it has no evidence before it regarding the relationship of these various individuals. It seems possible that Ms.

Brennan and Ms. Kreuger are the respective spouses of Mr. Brennan and Mr. Kreuger, but this is mere conjecture upon the part of the Court. Even if this were true, however, this fact alone would not necessarily indicate that the non-parties acquired their interest in the subject matter affected by the first judgment through inheritance, succession, or purchase, as Nevada law requires. Similarly, the Court has no evidence regarding the relationship of Mr. Brennan and Mr. Kreuger with the Trinity Family Church and the Creature Care Foundation. Although it appears from the case title that Mr. Brennan may be the trustee for these organizations, there is no evidence in the summary judgment motion which identifies him as such. Without such proof, the Court must find that the parties that were not involved in the state court action cannot be bound by that judgment. Therefore, any preclusive effect which the Court finds issuing from the state judgment will bind only Mr. Brennan and Mr. Kreuger.[1]

## IDENTITY OF ACTION

■ As noted above, the Magistrate erred by applying federal law to determine whether the state suit and the present federal case constitute one cause of action.[2] Under Nevada law, it appears that these two cases involve the same "claim" for claim preclusion purposes. In *Round Hill Gen. Improv. Dist. v. B–Neva, Inc.*, 96 Nev. 181, 606 P.2d 176 (1980), the appellant had filed suit to foreclose on certain properties. The district court, however, granted summary judgment on the grounds of claim preclusion after concluding that the claims in this action were identical to those of a previous action. The appellant contended that claim preclusion was inapplicable here, in that new delinquencies were the subject matter of the latter suit, and that the claims were not identical. *Id.*, at 177.

The Supreme Court reversed the lower court, as it found genuine issues of fact remained regarding the identity of the actions. Initially, the court noted that "when the same evidence supports the present and former causes of action, the two causes of action are identical...." *Id.*, at 178, *quoting Silverman v. Silverman*, 52 Nev. 152, 169–70, 283 P. 593, 598 (1930) (Coleman, J., concurring). If the appellant's new claims were based on evidence of new and independent delinquencies, concluded the court,

---

**1.** Even if Nevada applied a more liberal definition of "privy," it appears that the non-parties to the earlier action would not be bound. In *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir.1980), the circuit court found that a non-party could be bound by a judgment if he had a sufficient interest and participated in the prior action, if his interests were represented by one with the authority to do so, or if the interests of the actual party were so closely aligned with those of the non-party as to be its "virtual representative." *Id.*, at 1003, *citing Chicago, R.I. & P. Ry. Co., v. Schendel*, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926); *Aerojet General Corp. v. Askew*, 511 F.2d 710 (5th Cir.1975); *Ma Chuck Moon v. Dulles*, 237 F.2d 241 (9th Cir.1956). In this case, the parties have presented no evidence which would indicate the existence of such a relationship under even this more liberal test.

**2.** The Magistrate applied *Clark v. Watchie*, 513 F.2d 994 (9th Cir.) *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975), in which the circuit held that a federal cause of action under § 10(b) of the 1934 Act was a different cause of action than state court securities and corporation actions, because they were not "identical," and because the federal action was cognizable only in federal courts. It appears, however, that Clark has been implicitly overruled by *Constantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir.) *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). In that case, the circuit adopted a four-fold test for examining this question. The relevant criteria were found to be:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Id.*, at 1202, *citing Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980); *see International Ass'n of Machinists v. Aloha Airlines*, 781 F.2d 1400, 1404 (9th Cir.1986); *Derish v. San Mateo-Burlingame Bd. of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983) *overruled on other grounds, McClain v. Apodaca, supra*. The court noted further that the last of these factors was the most important. Under this new test, and in view of the *Marrese* case discussed below, it seems that *Clark* is no longer good law.

the claims could not be identical. The judgment was thus reversed and remanded to the lower court for resolution of this question.

In Nevada, therefore, it is identity of facts upon which the charges are based that indicates whether two claims are identical or not. This is very similar to a current Ninth Circuit test, which inquires whether the two claims arise out of the same common nucleus of operative fact. *See supra,* note 2. In the present case, it does appear that the latter federal claim is the same as that asserted in the former state court action. This particular § 10(b) action arises out of the same set of facts which gave rise to the initial state court action, in that the essence of both complaints is that the defendants have illegally diluted the ownership interests of the plaintiffs by fraudulently amending the Articles and issuing new shares of stock. The state court action, at first blush, involved only the plaintiff's attempt to gain access to the corporate records. It must be remembered, however, that the plaintiffs apparently lacked the requisite fifteen percent of the shares to inspect the books, and that they alleged the defendants' purported misconduct in amending the Articles as a defense to that deficiency. Therefore, the defendants' allegedly illegal and fraudulent actions form the basis for the defense in the state suit, and the complaint in the federal action. The causes of action are thus identical, as they rest on identical facts.

## EXCLUSIVE FEDERAL SUBJECT MATTER JURISDICTION

In view of the foregoing, it would seem that the earlier state court would necessarily preclude this latter action. As the parties have noted, however, the federal courts have exclusive subject matter jurisdiction to consider actions under the 1934 Securities and Exchange Act. 15 U.S.C. § 78aa. In view of this exclusive jurisdiction, it is arguable, and indeed seems reasonable that the federal courts ought not to give full faith and ·credit to state court judgments that would interfere with such exclusive jurisdiction. *See, Note, The Collateral Estoppel Effect of Prior State Court Findings in Cases Within Exclusive Federal Jurisdiction,* 91 Harv.L.Rev. 1281, 1290–91 (1978); *see also Comment, Exclusive Federal Court Jurisdiction and State Judgment Finality—The Dilema Facing the Federal Courts,* 10 Seton Hall L.J. 848, 866 (1980); *Note, The Effect of Prior Nonfederal Proceedings on Exclusive Federal Jurisdiction over Section 10(b) of the Securities and Exchange Act of 1934,* 46 N.Y.U.L.Rev. 936, 945–47 (1971); *Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State Court Determinations,* 53 Va. L.Rev. 1360, 1370 (1967); *Note, The Res Judicata and Collateral Estoppel Effect of Prior State Suits on Actions under SEC Rule 10b–5,* 69 Yale L.J. 608, 613 (1960). The United States Supreme Court has recently held, however, that the federal courts cannot automatically assume that the prior state court judgment is never able to bind later exclusive federal actions.

In *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), as in *Migra, supra,* the Court held that a federal court must always look to the law of the state from which a previous judgment issued when determining the binding effect of that state judgment under the full faith and credit statute, 28 U.S.C. § 1739. In *Migra,* the state courts had had concurrent subject matter jurisdiction over the § 1983 claim. The state courts in *Marrese,* however, lacked jurisdiction to consider the exclusively federal antitrust action.

In this case, a group of surgeons had challenged their denial of membership into the Academy of Orthopaedic surgeons by means of a lawsuit in the Illinois state courts. The state courts ultimately dismissed this action, finding that the plaintiffs had failed to state a claim for which relief could be granted. *Id.,* at 1329. In 1980, after the dismissal of the state court action, the plaintiffs then commenced a federal antitrust action in the federal district court in Illinois, based on the same events

that underlay their state court actions. The defendants, however, moved to dismiss this action, contending that the earlier state court judgment barred the subsequent federal antitrust claim. *Id.* The district court denied the motion, finding that the state courts lacked jurisdiction to consider the federal claim, and that states, as a matter of federal law, were precluded from giving their judgments such preclusive effect over exclusive federal actions. *Id.* A plurality of the Court of Appeals for the Seventh Circuit reversed, finding that under federal law a state court judgment bars the subsequent filing of a federal antitrust action if the plaintiff could have filed a materially identical state antitrust action along with the other state causes of action. In view of this, the circuit court found that the plaintiffs should have filed concurrent state and federal actions, or have brought their state actions in federal court pendent to their Sherman Act claim. *Id.*, at 1330.

The Supreme Court reversed. Although the Court noted that federal antitrust claims are within the exclusive jurisdiction of the federal courts, it found that the lower court had erred in suggesting that the federal courts should determine the preclusive effect of a state court judgment without regard to the law of the State in which the judgment was rendered. *Id.*, at 1331, *citing General Investment Co. v. Lake Shore & M.S.R. Co.*, 260 U.S. 261, 286–288, 43 S.Ct. 106, 116–117, 67 L.Ed. 244 (1922). The preclusive effect of a state court judgment on a subsequent federal lawsuit is determined by the full faith and credit statute, the Court found which indicates that the federal courts cannot "employ their own rules of res judicata in determining the effects of state judgments." *Id.* 105 S.Ct. at 1332. The statute, the Court continued, "commands a federal court to accept the rules chosen by the state from which the judgment is taken." *Id.*, citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). *See Migra, supra.* Therefore, the fact that the anti-

trust claim was within the exclusive jurisdiction of the federal courts was not relevant, the Court found, in that a state court judgment may have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts. *Id.*, citing *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929); *Kremer v. Chemical Construction Corp., supra; and Smith, Full Faith and Credit and section 1983: A Reappraisal*, 63 N.C.L.Rev. 59, 110–111 (1984). The Court commanded the federal courts to examine thoroughly the previous state court judgment in light of that State's own law to determine whether that judgment will have preclusive effect in a latter action within the exclusive jurisdiction of the federal system. *Id.*

The Court did note further that state courts will not often have opportunity to address this specific question, but it stated that the federal bench could rely on regular state preclusion principles to determine the extent to which the earlier state judgment bars subsequent litigation. *Id.*, citing *FDIC v. Eckhardt*, 691 F.2d 245, 247–48 (6th Cir.1982). The Court also found that many states include the concept of "jurisdictional competency" within their preclusion principles. Under this rule, the state will not give any of its courts' judgments preclusive effect where " '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts....' " *Id.*, 105 S.Ct. at 1333, citing *Restatement (Second) of Judgments*, 26(1)(c) (1982). If the State from which the initial judgment emanated followed this competency rule, the Court concluded, then the federal courts would not be bound by that earlier judgment as the state court lacked subject matter jurisdiction to consider the federal action. *Id.* Nonetheless, the Court reemphasized that the preclusion question was one resolved by the law of the State from which the initial judgment was rendered, and not by some federal common law principle. *Id.*

In the present case, it is not clear what effect the courts of the State of Nevada would give their judgment in this situation. It is certain that Nevada courts do give their judgments preclusive effect when subsequent litigation arises regarding a matter in which the previous state court was jurisdictionally competent. *See Gilbert v. Warren*, 95 Nev. 296, 594 P.2d 696 (1979); *Paradise Palms Community Ass'n v. Paradise Homes*, 89 Nev. 27, 505 P.2d 596 (1973). There is no direct discussion in any of the Nevada cases regarding the preclusive effect of a Nevada judgment on a subsequent claim on an exclusive federal question. As previously noted, when federal courts reach a position where the state courts have not spoken on a certain topic, it is their duty to apply the law which the highest court of the state would apply if it were presented with the identical question. *See Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir.1984).

In the present case, the Court finds that the Supreme Court of the State of Nevada would not give a Nevada court judgment preclusive effect over matters in which the state courts were not jurisdictionally competent. This conclusion is supported by the fact that most Western states which have discussed the matter have also ruled that their judgments have no preclusive effect over matters beyond their jurisdiction. *See Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 375 P.2d 439, 25 Cal. Rptr. 559 (1962) *cert. denied*, 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 130 (1963); *Hollywood Circle, Inc., v. Department of Alcoholic Beverage Control*, 55 Cal.2d 728, 361 P.2d 712, 13 Cal.Rptr. 104 (1961); *Pacific Mutual Life Insurance Co. v. McConnell*, 44 Cal.2d 715, 285 P.2d 636 (1955) *appeal dismissed and cert. denied*, 350 U.S. 984, 76 S.Ct. 472, 100 L.Ed. 851 (1956); *Johnson v. Southwestern Battery Co.*, 411 P.2d 526 (1966); *Landy v. First Nat. Bank & Trust Co. of Tulsa*, 368 P.2d 987 (1962); *Long v. Storms*, 52 Or.App. 685, 629 P.2d 827 (1981).

In addition, the Restatement has stated its support for the concept of jurisdictional competency. *See* Restatement (Second) of Judgments, § 26(1)(c) (1982); *see also Marrese v. American Academy of Orthopaedic Surgeons, supra, (citing* § 26(1)(c)); and *Bradford v. Richards*, 11 Mass.App. 595, 417 N.E.2d 1234, 1235 (1981) (court held that a state district court action could not be barred by a probate court ruling under § 26(1)(c) when the probate court lacked jurisdiction to hear the latter action to begin with). Finally, although the state supreme court has not yet had the opportunity to decide this question directly, it has noted the concept of jurisdictional competency in dictum. In *Paradise Palms, supra,* the court abolished the doctrine of mutuality of estoppel in Nevada, along the lines of *Bernhard v. Bank of America Nat. Trust & Sav. Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942). In so doing, however, the court stated that " '[t]he doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined *by a court of competent jurisdiction.*' " *Paradise Palms*, 505 P.2d at 598, *quoting Bernhard*, 122 P.2d at 894 (emphasis added). In view of this, it seems certain that the Supreme Court would include the concept of jurisdictional competency within its preclusion principles if squarely presented with the question.

In the present case, the fact that jurisdictional competency is a part of Nevada's preclusion law prevents summary judgment from being granted on grounds of claim preclusion. As noted above, the federal courts have exclusive subject matter jurisdiction over claims arising under § 10(b) of the 1934 Securities Exchange Act. In view of this, the state court was jurisdictionally incompetent to hear the plaintiffs' § 10(b) claim when the initial action was filed. The state court's summary judgment can therefore have no preclusive effect on this latter claim, in that the claim was beyond the subject matter jurisdiction of the court.

## ISSUE PRECLUSION

■ As stated above, this Court must look to Nevada law when determining the

claim preclusive effect of a Nevada state court judgment. The same is true of the issue preclusive effect of such a judgment. *See Hirst v. State of California,* 770 F.2d 776 (9th Cir.1985). In order for a judgment to have issue preclusive effect in the State of Nevada, there must be a "right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction...." *Lucas v. Page,* 91 Nev. 493, 538 P.2d 165, 166 (1975). The state supreme court has also noted that "[a]ny issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action." *Markoff v. New York Life Ins. Co.,* 92 Nev. 268, 549 P.2d 330, 332 (1976).

■ In the present case, it appears that no issue preclusive effect can be granted the state court judgment, in that it is impossible to determine from the order granting summary judgment what issues have been actually and necessarily resolved by that decision. It must be remembered that at issue in the present federal case is the question of whether fraud was employed in the amendment of the Articles and the issuance of the new stock, thereby diluting the plaintiffs' ownership percentage in the corporation. The defendants argue that the state court must have necessarily determined that no fraud was present in the case, in that the plaintiffs had placed the fraud issue before the state court as a defense to the fact that they lacked the necessary fifteen percent of the share to inspect the corporation's books. Because of the use of this defense, reason the defendants, the state court must have decided that fraud was not present in the case when it held that the plaintiffs failed to meet the fifteen percent barrier.

An equally plausible interpretation of the state court judgment, however, is that the issue of fraud was simply not determined by that court. The order granting summary judgment presented in the affidavits to this Court is a short, one-paragraph document and sets forth no basis for the relief granted. From the face of the order, it is impossible to tell what the state judge relied upon in making his decision. Further, contrary to the defendants' argument, the state court did not necessarily have to determine the fraud issue to reach the conclusion that the plaintiffs failed to meet the fifteen percent barrier. Although the alleged fraud of the defendants would explain *why* the plaintiffs failed to meet the barrier, it does not necessarily excuse that failure. It seems possible that under state law, the plaintiffs would be prevented from gaining access to the corporate books for failure to meet the barrier but would then have a separate cause of action for common law fraud, which could be separately prosecuted. By holding that the plaintiffs were not entitled to inspect the books, the state judge did not thus necessarily decide that there had also been no fraud in the amendment of the Articles and the issuance of new stock. *See Landex, Inc. v. State ex rel. List,* 94 Nev. 469, 582 P.2d 786, 790 (1978) (issue preclusion proper only where issues actually and necessarily decided in prior proceeding).

■ It is, of course, possible that the state court did reach the fraud issue in deciding the state motion for summary judgment. The burden of proving this fact to this Court, however, rests upon the defendants in this case, as they are the parties seeking to invoke that earlier judgment as a shield. Fed.R.Civ.P. 56(b). At present, the evidence before this Court indicates a genuine issue of material fact regarding the basis of decision in the state court. The existence of this issue of fact, therefore, precludes granting summary judgment on the grounds of issue preclusion. *See* Fed.R.Civ.P. 56(c).

IT IS, THEREFORE, HEREBY ORDERED that the conclusion of the Magistrate in the report and recommendation is adopted and affirmed.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment is denied.